404 A.2d 398

John W. MERRIAM

v.

CEDARBROOK REALTY, INC. and Witchwood, Inc. and Cedarbrook Joint Venture, Defendants,

Merrill Taub and Anthony H. Harwood, Trustees for Institutional Investors Trust, Intervenor and the Fidelity Bank, Intervenor.

Appeal of Merrill TAUB and Anthony H. Harwood, Trustees for Institutional Investors Trust, Intervenor.

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Granted April 17, 1979.

254

Henry W. Sawyer, III, Philadelphia, for appellants.

Jeffrey A. Less, Philadelphia, for appellee, John W. Merriam.

Alfred H. Wilcox, Philadelphia, for appellee, The Fidelity Bank.

Before JACOBS, President Judge, and CERCONE and LIPEZ, JJ.

JACOBS, President Judge:

This appeal arises from the order of the court below dismissing the petition of Institutional Investors Trust (IIT) for a stay of execution against two tracts of land. Appellant contends that execution against the two land parcels is expressly prohibited by the terms of a written participation agreement between IIT and plaintiff's assignor. The lower court held that the agreement expired by its own terms on February 15, 1977, and consequently dismissed the petition. For the reasons that follow, we affirm the order entered below.

This case was before us on a prior occasion after IIT's repeated attempts to intervene in the execution proceedings were unsuccessful. *Taub v. Merriam,* 251 Pa.Super. 572, 380 A.2d 1245 (1977). A detailed factual background of this litigation is set forth in that opinion, and will not be restated here. Following our prior decision directing that IIT be permitted to intervene, the lower court held a hearing on the petition for a stay of execution. By stipulation of counsel, Fidelity Bank (Fidelity) was permitted to intervene for the purpose of opposing IIT's petition. After the hearing was completed, the court below dismissed the petition. This appeal followed.

Two specific provisions of the participation agreement are at the heart of this controversy: paragraph 19, limiting execution to two of the four tracts of land securing the loans, and paragraph 13, limiting the time within which the agreement remains in force. Essential to the interpretation of these terms, however, is an understanding of the genesis of the participation agreement.

In December, 1973, IIT loaned $16,800,000 to Cedarbrook Joint Venture,[1] Cedarbrook Realty, Inc., and Witchwood, Inc. (the Cedarbrook Companies). Due to a limitation on the amount of a single loan by the trust, the aggregate amount was separated into four notes and mortgages, with each mortgage encumbering the four land tracts owned by the Cedarbrook Companies. As additional security, Fidelity provided a $5,000,000 letter of credit for Merriam until he could substitute a second mortgage on the Curtis Building in Philadelphia as additional collateral.

In May or June, 1974, however, IIT pledged the entire Cedarbrook loan package to Chemical Realty Corporation (CRC) as collateral for loan advances from CRC to IIT. CRC objected to lending money on the security of two unimproved tracts, and was dissatisfied with the letter of credit, which was to mature at the end of the year. Fur-

---

1. Merriam and Thomas Waynne, Inc., are co-venturers trading as Cedarbrook Joint Venture.

thermore, CRC's new loan officer determined that the substitutable second mortgage was not worth $5,000,000. Record at 502.

To resolve this problem between IIT and CRC, representatives for IIT, CRC, Fidelity and Merriam met in July, 1974. After negotiation, Fidelity agreed to purchase a participating $5,000,000 junior share of the $9,000,000 Apartment House loan in the event of a default.[2] The participation agreement also provided that if Fidelity were required to purchase the $5,000,000 share, it could also purchase the $4,000,000 senior share of the loan, and thereby become sole owner of the $9,000,000 loan. The parties also made the $9,000,000 lien senior to the other three notes and mortgages by the terms of a subordination and lien modification agreement.

After default on the Cedarbrook loans, Fidelity purchased the entire $9,000,000 loan, and assigned it to Merriam.[3] When Merriam thereafter confessed judgment and attempted to execute on the four land parcels, IIT petitioned to stay execution as to two of the four tracts, contending that paragraph 19 of the participation agreement prohibited execution against the Vacant Land tract and the Witchwood tract. Paragraph 19 provides:

19. Notwithstanding that the mortgages which secure the CRC Loans encumber the Witchwood Tract and the Vacant Land Tract, as well as the Shopping Center and the Apartments (as such tracts or improvements are defined in the Note Purchase Agreement), CRC and Fidelity, for themselves, their successors and assigns, agree that in the event they or either of them foreclose on the CRC Loans or either of them, the foreclosure proceedings or execution proceedings shall involve only the Shopping

2. Fidelity's participation in the Apartment House loan was secured by a recourse agreement between Fidelity and Merriam, referred to as the inducement agreement. Record at 232–233; 811–818.

3. This assignment from Fidelity to Merriam, was expressly permitted under paragraph 9 of the participation agreement.

Center and/or the Apartments and shall not involve the Witchwood Tract and/or the Vacant Land Tract.

Record at 780.

The error in this position, however, as Merriam alleges, arises from the fact that paragraph 13 of the participation agreement provides for termination as follows:

13. This Agreement shall continue in full force and effect to and including the earlier of February 15, 1977 or the date on which all principal, interest and other sums due to CRC or IIT under the First Cedarbrook Loan and the Second Cedarbrook Loan are repaid. Fidelity acknowledges and represents to CRC and IIT that it has received adequate consideration for entering into this Agreement and has received and will deliver to CRC and IIT the written opinion of its counsel, Messrs. Pepper, Hamilton & Sheetz that this Agreement is a valid, binding and enforceable agreement against Fidelity in Accordance with its terms.

Record at 775.

In an effort to avoid the plain meaning of the terms of paragraph 13, IIT called several witnesses to testify at the hearing below as to the intentions and understandings of the parties during negotiations.[4] Similarly, appellant has undertaken a "functional analysis" of paragraph 13 in its brief to us to sustain the position that paragraph 19 remains in effect. The defect in this approach clearly appears from the fact that paragraph 7 provides that the participation agreement is an integrated document, and appellant has not alleged fraud, accident, or mistake. *See e. g., LeDonne v. Kessler,* 256 Pa.Super. 280, 286, 389 A.2d 1123, 1126 (1978). Instead, IIT contends that paragraph 13 is ambiguous because the parties could not have intended paragraph 19 to expire on February 15, 1977.

4. After repeated objections, exceptions and discussion at the hearing among counsel and the court, Judge CIRILLO let in all evidence deemed relevant to the controversy, contingent upon a subsequent finding of ambiguity. Record at 191–193.

■■■ We simply cannot agree. Appellant is attempting to create an ambiguity by parol evidence where the agreement is not ambiguous on its face, an effort barred by the parol evidence rule. *Dahath Electric Co. v. Suburban Electric Development Co.,* 332 Pa. 129, 132, 2 A.2d 765 (1938). In order for us to find an ambiguity in the agreement, we must find that the document is reasonably capable of two different interpretations. *Foulke v. Miller,* 381 Pa. 587, 595, 112 A.2d 124 (1955). We agree with the implicit determination by the court below that no such ambiguity exists. The parties bargained at arms length[5] for the participation by Fidelity in the largest of the four loans in the event of default, in return for which Fidelity extracted the concession that its obligation to fund would not be open-ended.[6] During the time that the participation agreement remained in effect, paragraph 19 prohibited any foreclosing party from executing upon two of the four land parcels securing the loans, contrary to the four notes and mortgages as originally prepared and recorded. To hold, as appellant urges, that the restriction on execution extends in perpetuity while the other terms of the agreement expired, would be manifestly unfair to Fidelity and Merriam, and contrary to the intent of the parties as reflected in the clear written terms of their understanding.

■■■ As an apparent alternative to ambiguity, appellant argues that Merriam's actions after execution of the participation agreement clearly show that Merriam did not believe paragraph 13 terminated the provisions of paragraph 19. Specifically, appellant contends that Merriam's attempt to execute upon the four tracts before February 15, 1977

---

**5.** In the event of an ambiguity, Merriam urges us to construe it against IIT and CRC as draftsmen. Brief at 32. Although we find no ambiguity, we consider it important to note that while CRC and IIT authored all drafts of the participation agreement, the final result was the product of arms-length negotiations.

**6.** The February 15, 1977 date was apparently calculated by adding the 45-day grace period to the December 31, 1976 due date for repayment of the Cedarbrook loans. Record at 100.

demonstrates Merriam's true belief that paragraph 19 would remain in effect; otherwise, Merriam could simply have waited until February 16 to commence execution, if he in fact believed that the entire agreement expired on the previous day. We do not dispute the proposition that a party's actions following execution of a contract are indicative of his interpretation thereof. *See Foulke v. Miller,* 381 Pa. 587, 596, 112 A.2d 124 (1955). Nonetheless, we cannot accept appellant's characterization of Merriam's actions, in light of the latter's repeated insistence that the participation agreement expired upon acquisition of the entire $9,000,000 loan by Fidelity.[7] Under these circumstances, we remain unpersuaded by appellant's conjecture as to Merriam's state of mind.

Appellant's final contention is that paragraph 4 of the participation agreement prevents execution against the two contested land tracts beyond the expiration date contained in paragraph 13.[8] Paragraph 4 provides in part:

4. All rights and authority given to CRC and/or IIT under this Agreement shall be irrevocable and absolute as long as CRC, its successors or assigns shall have any interest in the First Cedarbrook Loan or the Second

---

7. Merriam also contends that IIT materially breached the participation agreement by failing to foreclose on all the properties after request as required by paragraph 2(e), forcing him to execute directly. While we need not address this issue in light of our disposition of the case, we nevertheless regard this allegation as another indication of Merriam's reasons for immediate execution.

8. None of the parties argued the merits of paragraph 4 to the court below, and only briefly mentioned the provision in their initial briefs to us. This section of the participation agreement was stressed at oral argument before us, and supplemental briefs have been filed. We cannot accept Merriam and Fidelity's argument that this issue has been waived, in light of the following language from *Hafer v. Schauer,* 429 Pa. 289, 294, 239 A.2d 785, (1968), *rev'd on other grounds, Incollingo v. Ewing,* 474 Pa. 527, 379 A.2d 79 (1977):

> [W]e are charged here with the responsibility of interpreting a written contract. The mere fact that the interpretation which we deem proper and just had never been raised before should not and does not preclude our Court from arriving at a result consonant with recognized principles of law.

Cedarbrook Loan either as collateral or as the holder thereof.

Record at 769.

■ IIT argues that this paragraph sustains all of its rights under the participation agreement so long as CRC or IIT has any interest in the Apartment House loan or the Shopping Center loan. Due to the fact that the Shopping Center loan has been reassigned to IIT from CRC, IIT reasons that its rights under paragraph 19 survive. We cannot accept this strained interpretation. An undistorted reading of paragraph 4 in its entirety reveals that this section was intended to define the rights of CRC and IIT *inter se.* We agree with Merriam's interpretation that IIT is not a "successor or assign" within the meaning of this section, for three reasons. First, IIT was the original assignor of the Cedarbrook loans to CRC, and so the provision in question contemplated assignment or other transfer to a third party, not IIT. Second, had the parties intended IIT to be the beneficiary of CRC's rights arising from a re-transfer of the loans, they could have so provided in paragraph 4. And third, the remaining provisions of the paragraph dealing with notices and payments between CRC and IIT clearly indicate that paragraph 4 was intended to protect CRC and IIT from an alteration of the loan structure by the other during the period that each one had an interest in the loans.

■ Furthermore, even if we assume that IIT is a "successor or assign," we have no difficulty in concluding that the specific duration provisions of paragraph 13 prevail over any general interpretation that might appear in paragraph 4. *See In re Alloy Mfg. Co. Emp. Trust,* 411 Pa. 492, 192 A.2d 394 (1963).

For all of the foregoing reasons, we hold that the court below did not err in dismissing IIT's petition for a stay of execution after a hearing. Accordingly, the order appealed from is affirmed.

Order affirmed.