469 A.2d 626

Theodora A. ROSENBERG, Appellant,

v.

David E. ROSENBERG.  (Two Cases)

David E. ROSENBERG

v.

Theodora A. ROSENBERG, Appellant.

David E. ROSENBERG, Appellant,

v.

Theodora A. ROSENBERG.

Theodora A. ROSENBERG

v.

David E. ROSENBERG, Appellant.

Superior Court of Pennsylvania.

Argued April 27, 1983.

Filed Nov. 18, 1983.

Petition for Allowance of Appeal Denied April 24, 1984.

Stanley W. Greenfield, Pittsburgh, for Theodora A. Rosenberg.

Hilary Wedner Braun and Paul J. Leventon, Pittsburgh, for David E. Rosenberg.

Before ROWLEY, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This case involves several consolidated appeals from the lower court's determination of various claims arising from the parties' September, 1976 property settlement agreement. Finding no merit in the parties' numerous claims, we affirm the order and decrees of the court below.

On September 8, 1976, contemporaneous with their divorce, the parties, Mr. and Mrs. Rosenberg, entered into a detailed property settlement agreement. Three separate actions resulted. In mid-October Mrs. Rosenberg sought specific performance of the settlement agreement alleging that Mr. Rosenberg had failed to provide her with several items to which he had agreed in the settlement. Mr. Rosenberg counter-claimed averring Mrs. Rosenberg's anticipatory repudiation of the agreement because she had allegedly refused, contrary to the agreement, to vacate the parties' pre-divorce residence. Mr. Rosenberg then sought to enjoin Mrs. Rosenberg from remaining at the house. Finally, Mrs. Rosenberg petitioned for child support. After hearing the three cases together, the lower court found that Mrs. Rosenberg had anticipatorily breached the agreement, enjoined her from living in the residence, completely reinstated the September, 1976 agreement and ordered Mr.

Rosenberg to pay a retroactive amount of child support. Both parties have appealed that order.

Mrs. Rosenberg contends first that the lower court erred in refusing to admit evidence of Mr. Rosenberg's misrepresentations under the fraud exception to the parol evidence rule. We find no merit in this contention. "The parol evidence rule seeks to preserve the integrity of written agreements by refusing to permit the contracting parties to alter the import of their contract through the use of contemporaneous oral declarations." *Rose v. Food Fair Stores, Inc.*, 437 Pa. 117, 120, 262 A.2d 851, 853 (1970). "[I]f the written agreement was intended by the parties to encompass the matter in dispute, then evidence of a contrary nature based upon an oral agreement at the time of the execution of the written agreement [is] barred in the absence of fraud, accident or mistake." *Boyd Estate*, 394 Pa. 225, 232, 146 A.2d 816, 820 (1958). The contracting parties may introduce evidence of fraudulent misrepresentations "to modify or avoid a written contract if it is averred and proven that *they were omitted* from the (complete) written contract by fraud, accident or mistake." *Bardwell v. The Willis Co.*, 375 Pa. 503, 507, 100 A.2d 102, 104 (1953) (emphasis in original). Mrs. Rosenberg argues specifically that Mr. Rosenberg represented that in addition to the provisions in the written property agreement, he would provide her with a house (including renovations and furnishings) worth $250,000, vacations, summer camp for the children, a new car annually, and gasoline for the car. The lower court tentatively admitted the testimony but later determined that the alleged misrepresentations failed to embody the fraud necessary for an exception to the parol evidence rule.

Two pertinent portions of the parties' agreement are as follows:

PARAGRAPH ELEVENTH: ... Further, subsequent to the closing of the purchase by the WIFE of such new residence, the HUSBAND and the WIFE will mutually agree as to certain labor and materials which the HUS-

BAND shall provide to the WIFE for alterations, repairs, decorating and refurbishing said residence, together with the amount and the manner of repayment of such costs if such be their agreement at that time.

PARAGRAPH TWENTY–SEVENTH: This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and may not be modified or amended except by a further Agreement or writing duly executed by both parties hereto. Any waiver by either of the parties of any of the terms of this Agreement shall not be construed an amendment of the Agreement, and either the HUSBAND or the WIFE may insist upon the performance of this Agreement in accordance with its terms irrespective of any such prior waiver or any prior course of conduct or action inconsistent with the provisions hereof.

We agree with the lower court that Mrs. Rosenberg has failed to demonstrate that the parties orally agreed upon certain items that were then fraudulently omitted from the written agreement. First, Paragraph Eleventh expressly discusses the manner in which Mr. Rosenberg agreed to pay for any alterations and renovations in Mrs. Rosenberg's new home. In light of this clear mention of Mrs. Rosenberg's new home and the accompanying renovations, and considering the subjects covered in the remainder of the agreement, e.g., medical expenses, country club memberships and use, child support, etc., we find that had the parties intended the agreement to cover summer camp, vacations and automobiles, these items would surely have been specifically mentioned. Furthermore, Paragraph Twenty-Seventh specifically states that "[t]his Agreement contains the entire agreement between the parties with respect to the subject matter hereof." Accordingly, we find that the lower court correctly evaluated the evidence and applied the parol evidence exclusion.[1]

1. Further, the lower court notes that the issue of an alleged oral agreement was not raised by appellee until 1979, although litigation between the parties began in 1976.

Mrs. Rosenberg further contends that the lower court erred in not permitting the introduction of parol evidence to explain an alleged ambiguity in Paragraph Eleventh. We find that the lower court correctly refused the introduction of this parol evidence as well. Paragraph Eleventh, as noted above, states that the parties will mutually agree on labor and materials for the renovation of Mrs. Rosenberg's new residence. Mrs. Rosenberg argues that an ambiguity exists because the value of the home and renovations for which she claims Mr. Rosenberg is responsible, $250,000, was omitted. She alleges that several witnesses were available to testify that Mr. Rosenberg orally represented that he would pay that specific amount. "In order for [the court] to find an ambiguity in the agreement, we must find that the document is reasonably capable of two different interpretations." *Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Superior Ct. 252, 259, 404 A.2d 398, 401 (1979) (appellant attempted to create an ambiguity through parol evidence when agreement was not ambiguous on its face). *See also Kohn v. Kohn*, 242 Pa.Superior Ct. 435, 442, 364 A.2d 350, 353 (1976) (parol evidence may resolve an ambiguity if the meaning of a term is unclear; however, parol evidence may not alter the terms of the contract). In the instant case, we find only one reasonable interpretation of the pertinent part of Paragraph Eleventh: after Mrs. Rosenberg had closed on a new home, the parties would agree on the labor, materials, and costs necessary to alter, repair, decorate, and refurbish the house. Mrs. Rosenberg's attempt to introduce parol evidence of a specific amount of money to be spent on the renovations would change the terms of this portion of the agreement. As it reads, the exact amount to be spent on labor and materials remains open, pending appellee's closing on a new house, presumably so that the parties could agree on the renovations needed for the particular house purchased. We therefore find that the lower. court correctly determined that no

ambiguity existed that would require the introduction of parol evidence.[2]

■ Mrs. Rosenberg next disagrees with the lower court's finding her in anticipatory breach of the settlement agreement.

> A repudiation is (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach ...

Restatement of Contracts, Second, § 250. Comment (b) reads:

> In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform ...

*See McClelland et al. v. New Amsterdam Casualty Co.,* 322 Pa. 429, 185 A. 198 (1936) (renunciation requires "absolute and unequivocal refusal to perform"); *McCormick v. Fidelity and Casualty Co.,* 307 Pa. 434, 161 A. 532 (1932) (unequivocal act evidencing "an intent not to fulfill his executory agreement at the time specified"). Here, the agreement required Mrs. Rosenberg to vacate the marital residence by December 31, 1976. Mr. Rosenberg testified that he first became aware of Mrs. Rosenberg's refusal to move out of the house in early October, 1976. (N.T. May 14, 1980 at 1250). Mrs. Rosenberg testified that she had refused to move because of Mr. Rosenberg's refusal to pay for renovations on her new house in accordance with their agreement. (N.T. May 6, 1980 at 765). At that time, Mr. Rosenberg had already paid, pursuant to the agreement, the first installment of spousal support and the initial amount agreed upon for child support pending a separate action, plus an additional $25,000 lump sum payment to which the parties had agreed. Thus, the evidence indicates

2. The instant agreement is unlike that in *Kohn v. Kohn, supra,* where our Court ordered that parol evidence be admitted to explain the ambiguity of the term "alimony" in a support agreement. The Court noted that "alimony" often includes "child support." In *Kohn,* two distinct interpretations of the term were possible, and the husband's obligation to the wife depended solely on the court's ultimate conclusion.

that Mrs. Rosenberg had no reason to think that Mr. Rosenberg would not perform his contractual obligations. Mrs. Rosenberg understood her obligation to vacate the marital residence by December 31, 1976, yet refused to perform that obligation. Her action could reasonably have been interpreted by the lower court as an "unequivocal act ... evidenc[ing] an intent not to fulfil" her contractual obligation.[3] *McCormick, supra.*

■ Mr. Rosenberg finds error in the lower court's refusal to assess damages against Mrs. Rosenberg in light of Mrs. Rosenberg's anticipatory repudiation of the parties' agreement. Specifically, Mr. Rosenberg avers that he is entitled to $29, 187, the total amount which he had paid to Mrs. Rosenberg before her renunciation. We find no merit in Mr. Rosenberg's contention. Any damages resulting from Mrs. Rosenberg's having remained in the house would accrue in favor of the Oliver Construction Corp., the corporation to which Mr. Rosenberg had deeded the marital residence after Mrs. Rosenberg surrendered her half interest. Mr. Rosenberg also alleges that he suffered personal monetary loss as well. Mr. Rosenberg's brief, however, fails to distinguish between his losses, leaving us little to consider. After reviewing the record, however, we agree with the lower court that we are "not convinced that [Mr. Rosenberg] has proven any net damage." (Lower Court Op. at 42).

■ Mr. Rosenberg also challenges the lower court's decision to reinstate the 1976 agreement. Specifically, he argues that because Mrs. Rosenberg committed an anticipatory repudiation of the agreement it cannot stand. We disagree. "This court has long recognized the power of a chancellor to shape and render a decree which accords with

3. Appellee also contends that appellant breached the agreement *first,* in allegedly refusing to renovate her new home. Because we agree with the lower court's evidentiary ruling disallowing the parol evidence offered, and because there is no evidence that appellant refused to renovate, we find that appellant's termination of the support payments after learning of appellee's refusal to move, occurred only after appellee's anticipatory repudiation of the agreement.

the equities in the case when, as here, the complaint includes a prayer for general relief." *Sack v. Feinman*, 489 Pa. 152, 160, 413 A.2d 1059, 1063 (1980). Further, appellate review is usually limited to deciding whether the chancellor abused his discretion or committed an error of law, and "our scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Id.*, 489 Pa. at 165, 413 A.2d at 1066.[4] Here, the chancellor found Mrs. Rosenberg in anticipatory breach because she refused to move out of the house as agreed to in the settlement. However, in reinstating the 1976 agreement in its entirety, the lower court contemporaneously granted a mandatory injunction in Mr. Rosenberg's favor, removing Mrs. Rosenberg from the home. The parties, therefore, each received what they had bargained for five years earlier. At the time the agreement was signed, the parties evidently came to somewhat of an equitable agreement. In reinstating that very same agreement, and placing the parties where they would have been, we cannot say that the chancellor erred as a matter of law or entered a demonstrably capricious decree. In this complex, bitter litigation, the reinstatement is a reasonable, thoughtful result.[5]

4. *See Frowen v. Blank*, 493 Pa. 137, 142, 425 A.2d 412, 415 (1981) ("Where a reading of the record reasonably can be said to reflect the conclusions reached by the chancellor, a reviewing court may not substitute its judgment for that of the chancellor.")

5. We do not find, as appellant alleges, that the lower court erred as a matter of law in reinstating the agreement. "An anticipatory breach gives the other party the right to choose whether or not the obligation as to future performance, a substantive part of the contract, shall continue to exist, or whether that part of the contract shall at once end, exactly as an offer for a contract, in its entirety may be accepted or rejected, and the action then taken determines whether or not there shall be a contract." *McCormick v. Fidelity and Casualty Co.*, 307 Pa. 434, 161 A. 532 (1932). Here, appellant discontinued his obligation under the agreement in response to appellee's breach, thus rendering it unenforceable. He has not, however, been harmed by its reinstatement as he has suffered no loss, and in fact, has gained what was to be his under the agreement. In addition, because we find the reinstatement within the court's equity power and within the law, we find appellant's distinction of *Sack v. Feinman, supra,* meritless.

Both parties challenge the child support award.[6] Mr. Rosenberg claims it is too high, while Mrs. Rosenberg alleges its insufficiency. The lower court, in awarding the support, considered what it thought to be fair and appropriate, subtracted the amount Mr. Rosenberg had been paying since January 1, 1977, and determined that Mr. Rosenberg owed $79,800 in support. Child support orders are reviewed in our Court by an abuse of discretion standard. *Remick v. Remick*, 310 Pa.Superior Ct. 23, 30, 456 A.2d 163, 166 (1983). "In support proceedings, the trial judge who sees and hears the witnesses is in a better position than the Superior Court to decide the issue on its merits." *Commonwealth ex rel. Friedman v. Friedman*, 223 Pa.Superior Ct. 66, 67, 297 A.2d 158, 159 (1972). Accordingly, we give great deference to the lower court's determination of what is essentially a monetary judgment. *Remick v. Remick, supra.* The lower court first reviewed what it considered the "extremely opulent" lifestyle of the family before the divorce. It noted such luxuries as summer camp, private school, a household maid and chauffeur and, significantly, the large spousal support and clothing and personal allowances for the children contained in the parties' agreement. The court then evaluated Mr. Rosenberg's yearly income and taxes and thereby determined the appropriate level of support for the children for each of the years 1977 through 1981. Because the parties in an earlier consent order had agreed to a postponed support determination, and because the lower court thoughtfully considered the family's economic status and appellant's income and ability to pay child support, we find no abuse of discretion in the court's determination.[7]

6. In December, 1976, a consent decree was entered whereby appellant would pay appellee $1,000 per month for child support, medical expenses and tuition. The decree also stated that "an action for support would be filed promptly and that an increase, though, not any decrease, would be retroactive to December 27, 1976." (Lower Court Op. at 15). The court's child support award, therefore, relates back to this consent decree.

7. We find no merit in appellant's contention that the lower court failed to consider that two of the children were emancipated at the

304

Accordingly, finding no merit in the parties' contentions, we affirm the order and decrees of the lower court. Affirmed.

time of its order. The court, in making its order, did consider the majority status of the children in appellee's custody.