In re MONSOUR MEDICAL CENTER, formerly Monsour Hospital & Clinic, Inc., Debtor.

WELLS NATIONAL SERVICE CORPORATION, Movant,

v.

MONSOUR MEDICAL CENTER, Respondent.

Bankruptcy No. 80–0261.
Motion No. 87–1140.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 11, 1987.

Robert O. Lampl, Janice L. Morison, Pittsburgh, Pa., for Monsour Medical Center.

Kevin P. Lucas, Manion Alder & Cohen, P.C., Pittsburgh, Pa., for Wells Nat. Service Corp.

## MEMORANDUM OPINION

BERNARD MARKOWITZ, Bankruptcy Judge.

Before the Court is the motion of Wells National Service Corporation (hereinafter "Wells"), seeking the enforcement of a Court Order and/or money damages resulting from Debtor's lack of compliance therewith. Debtor responds that it had properly complied; that Wells has breached the contract by and between the parties and that Debtor merely treated the contract as terminated. Upon review of the arguments presented by these parties, this Court finds in favor of Wells as a matter of law and reserves the award of money damages on account of same, pending an additional hearing thereon.

## FACTS

Debtor filed a voluntary Chapter 11 petition on February 22, 1980. Prior to said filing, Debtor was a party to two (2) contracts with Wells: one for the lease of black and white television receivers to be used in individual patient rooms; and one for the use of a nurse/patient monitoring system.

On May 28, 1980, this Court authorized a new television agreement between the Debtor and Wells, whereby those black and white receivers presently in place would be replaced with color receivers. This agreement specifically states that it shall run for ninety-six months (8 years) from the date of completed installation; in the instant case, installation was completed September 1, 1980 and the contract is to run until September 1, 1988. Debtor was to receive a monthly draw, plus additional commissions after reaching a stated annual average of rentals.

The Nurse Call agreement, executed on July 25, 1973, provided for the installation of equipment to enable and enhance communications between patient rooms and nurses' stations. That agreement, by its terms, was to continue for an initial one hundred twenty month (10–year) period; the agreement was to automatically be extended thirty-six months (3 years), unless at least 6 months prior to the initial period of expiration, Debtor or Wells provided the other party with written intention to terminate. Neither party proffered such written termination.

Sometime prior to 1983, the parties agreed to allow Wells to apply Debtor's draw on the television contract to offset a portion of its monthly lease payment on the Nurse Call contract.

Debtor responds by stating that the Nurse Call system was a lease purchase agreement rather than a true lease, and that the full value of the equipment was paid at the end of the 10–year initial period, i.e. that the equipment was paid in full and became the Debtor's as of July 25, 1983. Therefore, Debtor claims Wells had no right to continue withholding the television payments as an offset; in so doing, Wells allegedly breached the television contract, allowing Debtor to enter into a new contract for television services.

## ANALYSIS

Courts must interpret and enforce contracts as they are written, *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974); *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981); any rights and obligations clearly expressed must be recognized and enforced. *CBS, Inc. v. Capital Cities Communications, Inc.*, 301 Pa.Super 557, 448 A.2d 48 (1982). A contract is ambiguous only if it is reasonably susceptible of more than one construction. A contract is not made ambiguous merely because the parties disagree as to the proper construction. *Rosenberg v. Rosenberg*, 322 Pa.Super. 293, 469 A.2d 626 (1983); *Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Super. 252, 404 A.2d 398 (1978); *Comm. Dept. Transp. v. Gramar Construction Company*, 71 Pa. Cmwlth. 481, 454 A.2d 1205 (1983).

In the case at bar it is clear that both the Nurse Call agreement and the television agreement were and are leases of personal property:

1. Wells remained responsible for all installation, replacement, mainte-

nance and repair of the Nurse Call system.

2. Wells was responsible for obtaining insurance on the equipment and absolved Debtor for any responsibility associated with loss or damage to the Nurse Call equipment.

3. The lease specifically states that it is to run for 10 years and will be automatically renewed for an additional 3–year period, unless a party requests, in writing, and prior to the commencement of the renewal period, that the contract be terminated.

4. The default provision of the lease provided Wells with the right to repossess the equipment without liability for reasonable acts associated therewith. Therefore if the Nurse Call system was installed by Wells, Wells had the right to remove it—although clearly, Wells would be responsible for repairing any damages caused by the actual removal.

5. There is no provision in the Nurse Call agreement for the transfer of ownership by an optional payment, nominal or otherwise.

6. Neither party gave notice of termination of said contract; therefore, the nurse call agreement was in effect until July 25, 1986.

7. The television agreement required Wells to bear the responsibility for installation, maintenance and repair of all television receivers.

8. Wells retained title to said receivers and upon the termination of the lease, is entitled to remove same from Debtor's property.

9. Wells is responsible for all insurance on said equipment and absolved Debtor of any responsibility for loss or damage thereto.

10. The lease is to continue for 8 years from the date of completed installation (September 1, 1980) and will be renewed automatically for successive 1–year terms until Debtor or Wells terminates same in writing within a window period of 90–180 days prior to the then present lease term's expiration; therefore, the lease remains in force at least until September 1, 1988.

By removing Wells' equipment prior to the expiration of the lease, Debtor has breached same. We therefore find in favor of Wells; however, to enforce the lease would cause a new and additional breach of contract with the present provider. Therefore, an additional hearing will be held in order that we might determine an appropriate award of money damages.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 11th day of August, 1987, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that Wells' Motion is GRANTED.

A hearing will be scheduled at the convenience of the Court, at which time evidence will be accepted as to money damages.