541 A.2d 380

**Eleanor MORGAN, Guardian for Esther Weand, an Incompetent, Appellants,**

v.

**FIRST PENNSYLVANIA BANK, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1987.

Filed May 11, 1988.

410

[black redaction bars]

John P. Yatsko, Norristown, for appellants.

David R. DeStefano, Norristown, for appellee.

Before CAVANAUGH, BECK and HESTER, JJ.

CAVANAUGH, Judge:

The issues in this case are whether the court below erred (1) in permitting the appellee, First Pennsylvania Bank, to admit signature cards in evidence and (2) in permitting the bank to introduce evidence which explained the terms of the bank's written regulations.

In 1966, Esther Weand opened a passbook savings account with the First Pennsylvania Bank. In 1971 she had the account changed to a joint account with her sister, Julia Bruce. Both Esther and Julia signed the signature card which specifically stated that the account was a joint account.[1] The agreement with the bank provided that the account was subject to withdrawal by either party. On November 30, 1983, Mrs. Bruce wrote to the bank and requested that the joint account be closed and that all the funds in the account be sent to her. Gwendolyn Webster, who was the bank manager at the bank involved in this transaction, testified that she knew Mrs. Bruce's signature from prior transactions and verified the signature on the letter comparing it with the signature on the signature card kept at the bank. A treasurer's check in the amount of $5,180.22 was sent by the bank to Mrs. Bruce on December 14, 1983 and the account was closed.

1. The signature card which both Mrs. Weand and Mrs. Bruce signed stated: "Each of the undersigned is the owner of the whole of this account and each shall have full power to draw against it ..."

On December 9, 1983, a few days before the funds were paid to Mrs. Bruce, Mrs. Weand was adjudicated incompetent and a guardian of her estate appointed. The appellant in this case is the guardian of Mrs. Weand's estate.

The appellant commenced an action in the court below alleging that the appellee, First Pennsylvania Bank, was negligent and also breached its contract. The claims were partially based on the allegation that the bank transferred the funds in violation of its regulations as set forth on the passbook savings account. The case was initially heard before a panel of arbitrators who found for the appellee bank. An appeal was taken to the Court of Common Pleas. Following a two day trial without a jury, the court below, by Yohn, J., found for the bank. The plaintiff, who was the guardian of Mrs. Weand's estate, filed post-trial motions which were denied and an appeal was filed with this court.

■ In order to put the issues in focus, we must examine the legal consequences of what Esther Weand did in 1971. In that year she established a joint bank account with her sister, Julia Bruce. Both sisters signed the signature card and either could withdraw the funds from the account. The survivor was to receive the balance in the account. As pointed out in *Watson Estate*, 290 Pa.Super. 384, 434 A.2d 805 (1981) an executed signature card establishes *prima facie* an inter vivos gift from the party funding the account to the other joint tenant. See also *Krempasky Estate*, 348 Pa.Super. 128, 501 A.2d 681 (1985); *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972). The presumption of a valid *inter vivos* gift, in the circumstances of establishing a joint account, may be rebutted only by clear, precise and convincing evidence. *Banko v. Malanecki*, 499 Pa. 92, 451 A.2d 1008 (1982).

In the instant case, it appears that Esther Weand had contributed the whole amount in the savings account. However, when she made the account into a joint account, her sister, Julia Bruce, had equal rights to the account. "Even when one contributes the entire sum to a joint bank account, the rights of each of the tenants to the joint fund

are the same, the one who made the contribution has by that act made an immediate gift to the other." *Cochrane Estate*, 342 Pa. 108, 111, 20 A.2d 305, 307 (1941). See also *Glessner v. Security–Peoples Trust Co.*, 166 Pa.Super. 566, 72 A.2d 817 (1950).[2]

The facts before us are analogous to those in *Beniger Estate*, 449 Pa. 373, 296 A.2d 773 (1972). In that case, a joint tenant who had the right to withdraw funds, withdrew all of the funds from a savings account after a petition had been filed to have the other joint tenant declared incompetent. Three weeks after the joint account was closed, the alleged incompetent was declared incompetent and he died eight days later. The Supreme Court held that the funds withdrawn belonged to the joint tenant who withdrew them. The court stated at 449 Pa. 377, 296 A.2d 776, that the joint tenant's incapacities, *"at the time the account was closed by appellee are irrelevant since the gift was presumptively made when the card was signed and not, as appellant contends, when the money was withdrawn."* (Emphasis added).

*Bramble Estate*, 4 Pa.Fid.2d 243 (Chester County 1984) is also instructive. The son of an incompetent was ordered to repay the guardian of the incompetent's estate $17,000.00

2. Appellant calls our attention to 20 Pa.C.S. § 6303 which provides in part:

§ 6303. Ownership during lifetime

(a) Joint account.—A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

However, the effective date of the Act is September 1, 1976. The joint account in the instant case was established prior to the effective date of the Act which does not apply to our case. See *Livingston v. Livingston*, 275 Pa.Super. 285, 418 A.2d 724 (1980). Further, the Multi–Party Accounts Act, as this Act is called, states at 20 Pa.C.S. § 6302:

The provisions of this chapter are applicable solely to the determination of property rights among parties to multiple-party accounts and all claims made through them but do not apply to and do not affect financial institutions or their rights and liabilities with respect to multiple-party accounts, which shall be determined exclusively by applicable law other than this chapter. No right or claim against a financial institution may be based on this chapter.

which the son withdrew from the bank account which was in the joint names of the father and son. At the time the father established the joint account, he had begun to slip mentally and there was evidence that the joint account was a mere "convenience" account for the father's money so that the father would not have to go back and forth to the bank to transact business. Even though the court held that there was no gift, it stated at 4 Pa.Fid.2d 244: "... *as between the bank and the joint owners of the account, either joint owner is free to withdraw the money from the account ...*" (Emphasis added).

The evidence *prima facie* established an inter vivos gift by Mrs. Weand to her sister in 1971 when the account was made into a joint account. There was no evidence whatsoever introduced to rebut the presumption of a valid *inter vivos* gift and Mrs. Weand's mental condition at the time of the withdrawal was irrelevant. See *Beninger Estate, supra.* However, we need not decide that a valid *inter vivos* gift was made, but only reach the issue that as between the appellee bank and Mrs. Weand, the bank acted properly in paying the funds to her sister, Mrs. Bruce.

■ We find no error in admitting the signature cards into evidence. To begin with, the appellant agrees that Mrs. Weand added her sister as a joint owner in 1971. It is also agreed that Mrs. Bruce sent a letter to the appellee bank on December 13, 1983 requesting withdrawal of all of the funds in the account. Finally, no evidence was introduced to attack the validity of Mrs. Bruce's signature on the signature card or withdrawal letter, nor is it contended that anyone other than Mrs. Bruce received the proceeds in the account.

A bank manager at the branch where the account was handled testified that the signature on the letter withdrawing the funds was Mrs. Bruce's signature. Her testimony was as follows:

A.  And have you ever seen that—what is that signature?

A.  It is the signature of Julia E. Bruce.

Q. And have you ever seen that signature before?

A. Yes.

Q. And under what circumstances have you seen that signature?

A. Through the years with me working at Mount Airy, any correspondence that would come in would normally come in from Mrs. Bruce. And when we got this letter, the first thing I do is verify the signature.

The trial court did not err in allowing the bank manager to testify concerning Mrs. Bruce's signature on the signature card as she was acquainted with the signature. One can testify that he or she is familiar with a signature "from having conducted a correspondence with him." *Berkley v. Maurer*, 34 Pa.Super. 363, 370 (1907). In addition, the bank manager, who had 18 years experience with the bank, and had corresponded with Mrs. Bruce over the years, could qualify as an expert witness with respect to the identity of Mrs. Bruce's signature.[3] Subsection (d) of 42 Pa.C.S. § 6111 leaves to the trier of fact, in this case the hearing judge, the determination of the genuineness of a

3. 42 Pa.C.S. § 6111 provides:
(a) Opinion evidence as to handwriting.—Where there is a question as to any writing, the opinions of the following persons shall be deemed to be relevant:
(1) The opinion of any person acquainted with the handwriting of the supposed writer.
(2) The opinion of those who have had special experience with, or who have pursued special studies relating to, documents, handwriting, and alterations thereof, who are called experts in this section.
(b) Comparison of handwriting.—It shall be competent for experts in giving their testimony under the provisions of this section, to make comparison of documents and comparison of disputed handwriting with any documents or writing admitted to be genuine, or proven to the satisfaction of the judge to be genuine, and the evidence of such experts respecting the same shall be submitted to the jury as evidence of the genuineness or otherwise of the writing in dispute.
(d) Jury question.—The opinions of the witnesses to handwriting being submitted as competent testimony to the jury, the final determination as to whether any particular handwriting is genuine or simulated shall remain, as heretofore, a question for the jury on all the evidence submitted.

signature.[4]  Of equal importance, there is no dispute in the matter before us that the person who closed out the account and to whom the bank sent the balance in the account was Julia Bruce, the joint tenant on the account.  The appellee properly transmitted the funds to Julia Bruce as the person who was entitled to receive them as far as the appellee bank was concerned.

■   We also agree with the court below that the banking regulations which are set forth on the passbook are ambiguous and parol evidence was properly admitted, not to vary the terms of the agreement, but to assist in interpreting the regulations.  The rules and regulations subject to interpretation are set forth in the savings passbook.  The thrust of the appellant's complaint is that the money was withdrawn without a passbook and without a 30–day waiting period. The applicable provisions of the regulations are:

2.   All deposits into this account in First Pennsylvania Bank N.A. ("Bank") are received subject to the following rules and regulations.

3.   The passbook evidencing the account must be presented with each deposit and withdrawal.  Deposits in the account may be made at any office of the Bank. Bank may, in its discretion, refuse any deposit to the account or limit the amount of any deposit therein.  Bank is not responsible for any deposit unless it is entered in the passbook or an official receipt for the deposit is issued by the Bank.  Bank may, at its discretion, pay account withdrawals in cash or by check.

4.   Withdrawals from the account may be made at any office of the Bank upon presentation of identification satisfactory to the Bank.  *Bank reserves the right to*

4.   Observing a person sign his name "is not a necessary qualification in order to enable a non-expert to testify as to the genuineness of a disputed signature.  The only requirement is that he be acquainted with the handwriting of the alleged signer, and such acquaintance may be obtained in many ways, for example from an assumption that signatures were genuine which he had long acted upon as such without challenge:  ... (Citing cases)".  *Hershberger v. Hershberger,* 345 Pa. 439, 445, 29 A.2d 95, 98–99 (1942).  While this statement is dictum in the cited case, it is applicable to the facts before us.

*close the account by payment of the balance and all interest accrued thereon to the depositor ...*

8. No entries in the passbook will be valid unless made by an authorized representative of and at an office of the Bank. Prompt notice of change of address should be given to the Bank. Bank may at any time require the surrender of the passbook for examination and settlement, and in case of the improper use of the same, retain possession thereof. The passbook shall be surrendered to Bank when the account is closed.

9. In case the passbook is lost, destroyed, or stolen, immediate notice thereof must be given in writing to Bank. After the expiration of one month from the time the Bank receives such notice, a new passbook bearing a new number will be issued to replace the lost or destroyed passbook, provided Bank is furnished with a satisfactory bond of indemnity ... (Emphasis added).

A written contract must be interpreted as a whole. *Stern v. Vic Snyder, Inc.*, 325 Pa.Super. 423, 473 A.2d 139 (1984). A contract is ambiguous when it is reasonably capable of different interpretations. *Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Super. 252, 404 A.2d 398 (1978). Although the parol evidence rule bars such evidence that adds to or varies an agreement, it does not bar evidence introduced for the purpose of interpreting an ambiguous agreement. *Trapuzzano v. Lorish*, 467 Pa. 27, 354 A.2d 534 (1976). The court below found that sections 3 and 4 appear inconsistent, and we agree. Paragraph 3 states that the passbook must be presented with each deposit and withdrawal while Paragraph 4 indicates that a withdrawal may be made without the book if the bank is satisfied as to the identity of the party making the withdrawal. The ambiguities become even clearer when reading paragraphs 8 and 9 together with paragraph 4. When doing so it becomes questionable, at the very least, whether paragraph 9, on which the appellant relies, even applies to the closing of an account. While paragraph 8 relates to closing an

account in the last sentence, paragraph 9 does not even mention closing an account. Indeed, paragraph 4 appears to deal more directly with closing an account than paragraph 9 which speaks in terms of a lost or stolen passbook. Based on these ambiguities in the regulations as set forth in the passbook, the court below properly admitted the testimony of the bank manager explaining the regulations and their applicability to the transaction involved in this case.[5]

If the bank closed the account and paid the balance therein to the wrong person, it would clearly be responsible to make good the loss suffered by the depositor. In this case, however, Mrs. Bruce to whom the money was paid, was entitled to it as far as the appellee was concerned and had been since 1971 when her sister established a joint account. Mrs. Bruce was *prima facie* the donee of an *inter vivos* gift and no evidence whatsoever was introduced to indicate that her status had in any way been changed.

If it could be established that she was not entitled to the money, vis a' vis her sister, Mrs. Weand, then the guardian of Julia Weand possibly could proceed against Mrs. Bruce. That case is not before us for decision. However, in the relationship between the bank and Mrs. Bruce, the First Pennsylvania Bank properly paid the balance in the account

---

5. The bank manager testified concerning the regulations as follows: THE WITNESS: Okay. In this instance, it does state that the account is [sic] restriction expiration of one month, that a new passbook bearing a new account number is then executed after thirty days, *but in this situation there was not going to be a new account number, there was not going to be an account with First Pennsylvania.*
BY MR. MATHEWSON:
Q. And why is that a significant difference here?
A. Because in this number [nine] it applies to—there is a bond of indemnity when a customer loses a passbook or it is destroyed or does not have it. The account is frozen for thirty days. They do sign. They fill out their Social Security and all. At the end of thirty days, we immediately will assign a new account number to that customer with a new passbook, so it would be an ongoing transaction with First Pennsylvania Bank, *and in this case it was not that way. The account was being closed in its entirety.* (Emphasis added).

to her as under the agreement entered into with the bank she had "full power to draw against [the account]".

Judgment affirmed.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting:

I respectfully dissent both from the majority's discussion of the legal consequences of Ms. Weand's actions in 1971 and from its disposition of the issues presented for our review.

The case presented to us involves Ms. Weand's rights in relation to the bank where she established a joint savings account. We are not deciding Ms. Weand's rights in relation to her sister, whose name was placed on the account and who converted the funds in the account. The majority's background discussion contains cases which solely discuss the latter relationship. Our focus should be on the standard of care owed by a bank to a depositor and not on whether Ms. Weand made an inter vivos gift to her sister. Here, the depositor alleges that the bank owes her money due to the fact that the bank acted negligently in handling her funds by violating its regulations. Since I agree with appellant that parol evidence was incorrectly admitted to vary the terms of the regulations, I believe appellant is entitled to a new trial.

Appellant, Ms. Weand's guardian, instituted this action alleging that appellee was negligent in transferring an account balance due to the fact that it had violated its written regulations providing that: 1) the passbook evidencing the account must be presented with each withdrawal; and 2) if a passbook is lost, no withdrawals are permitted for thirty days and only after bond is posted.

Following the adverse decision at trial, appellant filed the following post-trial motions which were denied March 24, 1987:

Plaintiff hereby moves for a new trial and for judgment n.o.v. in the alternative for the following reasons:

1. The verdict was against the law, against the evidence and against the weight of the evidence.

2. The court erred in admitting the signature card offered in evidence by the defendant.

3. The court erred in permitting the defendant's witness to offer evidence to vary the terms of the defendant's written regulations.

Only points two and three are preserved for our review by these motions, Pa.R.Civ.P. 227.1(b)(2); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). I agree with appellant's third contention and believe she is entitled to a new trial on that basis.

The trial court permitted one of appellee's bank managers to testify in violation of the parol evidence rule. The testimony was admitted to prove that appellee had not violated its regulations by the procedure followed in this case. There are fourteen numbered passbook regulations, which provide in relevant part (emphasis added):

### THE FIRST PENNSYLVANIA BANKING AND TRUST COMPANY

#### SAVINGS PASSBOOK ACCOUNT

#### RULES AND REGULATIONS

2. All deposits in this savings passbook account ("account") in The First Pennsylvania Banking and Trust Company ("Bank") are received subject to the following rules and regulations.

3. *The passbook evidencing the account must be presented with each deposit and withdrawal.*

. . . .

4. Withdrawals from the account may be made at any office of the Bank upon presentation of identification satisfactory to the Bank. Bank reserves the right to close the account by payment of the balance and all interest accrued thereon to the depositor. . . .

. . . .

9. *In case the passbook is lost, destroyed, or stolen,* immediate notice thereof must be given in writing to Bank. *After the expiration of one month* from the time the Bank receives such notice, *a new passbook* bearing a new number *will be issued to replace the lost or destroyed passbook,* provided Bank is furnished with a satisfactory bond of indemnity.

One of appellee's bank managers was permitted to testify, over objection, that notwithstanding regulations three and nine, the regulations were not violated in this case. He testified that when savings accounts are closed entirely, only regulation four applies. Thus, even though the passbook was missing, appellee closed the account in conformity with its regulations since a bank employee verified Bruce's signature on the letter with the signature on the card. This is satisfactory identification under regulation four.

Appellee argues that the testimony was permissible under the parol evidence rule since the regulations are ambiguous in that it appears from regulation four that withdrawals can be made without presentation of the passbook if the withdrawing party satisfactorily identifies himself. Appellee also argues that regulations nine and three do not apply to "closing" accounts, only to "withdrawals" from accounts. Thus, appellee permits a depositor to withdraw the entire account balance if the passbook is lost, notwithstanding regulations nine and three. It concedes that it would not permit the same person to withdraw a single dollar from the account if the passbook were lost since regulations nine and three would then apply.

I agree with appellant that these arguments are absurd and that the regulations are clearly unambiguous. Regulation two states that *all* the rules and regulations apply. Regulation three is therefore *supplemented,* not supplanted, by regulation four. Together, they require that both a passbook and identification be presented before *withdrawals,* regardless of amount, are permitted. Otherwise, regulation three would be meaningless. Regulation nine, together with regulation three, permit no *withdrawals,* re-

gardless of amount, from the account for thirty days if a passbook is lost. Withdrawal of the entire account balance is a withdrawal, whatever else appellee may choose to call it.

The law is clear. A writing that is not reasonably capable of two different interpretations is not ambiguous and cannot be varied by parol. *Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Super. 252, 404 A.2d 398 (1978). In interpreting the intent of parties in a written contract, when the words are clear and unambiguous, the intent is to be determined only from the express language of the agreement. *Ormond Realty v. Ninnis*, 341 Pa.Super. 101, 491 A.2d 169 (1985); *Woytek v. Benjamin Coal Co.*, 300 Pa.Super. 397, 446 A.2d 914 (1982). In addition, a written agreement will be construed against the party who prepared it. *Ormond Realty v. Ninnis, supra; Central Transportation v. Board of Assessment Appeals*, 490 Pa. 486, 417 A.2d 144 (1980).

In this case, Bruce wrote that the passbook was lost. She did not present it. Regulations three and nine applied. A bank employee should not have been permitted to testify that they did not. Since the trial court permitted testimony in violation of the parol evidence rule, I believe that appellant is entitled to a new trial.

However, there is no case holding that a bank is automatically liable to its depositor for breaching its regulations. The converse is true in that a bank is not liable to a depositor if it has acted in conformity with its established, prudent procedure. *Layman v. Western Savings Bank*, 302 Pa.Super. 433, 448 A.2d 1119 (1982). In *Layman*, we held that a bank is not responsible to its depositor if it has exercised ordinary care, and we held that ordinary care is established where the bank has complied with its own regulations.

Parenthetically, however, I note that there was very credible evidence that appellee did not follow established bank procedure in this case. From testimony at trial, it appears that when a passbook for a joint account is lost, appellee normally requires that both signatories to the

422

account present themselves at an office with identification. Once both signatories sign a lost passbook form, the bank releases the funds.

This procedure is logical, prudent and requires minimal effort by the bank.

This credible testimony conflicts with the bank manager's testimony that normal bank procedure was followed in this case. Here, a bank teller, without a simple telephone inquiry to Ms. Weand (the person whose money was involved and who would possess the passbook) paid a passbook balance to Ms. Weand's sister, whose name had been added to the account. This action was taken on the basis of *mail* correspondence from the sister whom the teller had never seen. The letter was not witnessed or notarized and was not accompanied by any identification. The letter specifically stated that the passbook was "lost," and the money was sent even though the bank has a regulation requiring a passbook for withdrawals. I find incredible that appellee normally operates in such a careless manner.

Ms. Weand deposited *her* money with appellee and is entitled to expect some degree of care with respect to her funds from the bank. If appellee would have been dealing with its own money, would it have acted similarly?

For the reasons enumerated above, I respectfully dissent.