587 A.2d 340

**Carol FRANK, a/k/a Carol Frank Kinstlick, Appellee,**

**v.**

**Barry H. FRANK, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 8, 1991.

Filed March 7, 1991.

Lynne Z. Gold–Bikin, Norristown, for appellant.

Berle M. Schiller, Philadelphia, for appellee.

Before WIEAND, MONTEMURO and HESTER, JJ.

MONTEMURO, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County, requiring appellant, Barry Frank, to make payments for educational expenses on behalf of the parties' son pursuant to the provisions of a separation agreement.

The parties to this action were married in 1962. Appellee Carol Frank Kinstlick instituted divorce proceedings in September of 1981. A decree granting the divorce on grounds of indignities was entered in December of the same year, incorporating by express intent a comprehensive separation agreement. Under the terms of the agreement appellant was to bear the responsibility for the higher education expenses of the parties' three children, Toby born 1966, Kenneth, born 1968, and Gary, born 1970.[1]

In June of 1986, two years after the eldest child had matriculated, appellee's family established the Rose Gross Scholarship Trust, of which the parties' children were beneficiaries. By its terms the trust was compelled to pay a maximum of $6500 per year for the actual amount of tuition, "net of any scholarship aid received by any beneficiary." (Trust Instrument, at 2.02) Appellant did not learn of the existence of the Trust until the summer of 1988. At that time he filed a Petition for Special Relief requesting court ordered reimbursement from appellee for expenditures made for college costs on behalf of two of the parties' children, reimbursement for attorney's fees, and that the court find appellee in contempt of the agreement. Less than a week later, appellee filed a cross petition for contempt, asserting that appellant had breached his obligation under the agreement, having contributed nothing toward the college expenses of the parties' third child, Gary, then

---

1. Although appellant asserts that he has seen only one of his children in the last ten years, and that one only once, there is no argument advanced that the estrangement excuses his performance under the contract per *Milne v. Milne*, 383 Pa.Super. 177, 556 A.2d 854 (1989) *alloc. dn.*, 524 Pa. 598, 568 A.2d 1248.

entering his freshman year. After hearing, an order was entered requiring appellant to comply with the terms of the agreement with regard to Gary's future undergraduate college expenses prior to any payment from the Trust, and to pay past and current educational expenses, for a total of $9,732, which amount included an increased spending allowance. This appeal followed.

Appellant has presented us with three issues on appeal which we will address seriatim.

Preliminarily, we note that although the agreement in question is by its own terms incorporated into the decree divorcing the parties, it does not merge, since there is no specific language indicating that merger is intended. *See, Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988). Moreover, the language of the agreement itself, rather than that of the decree limits the trial court's jurisdiction to an enforcement function.[2] (Agreement, Para. 4) Nor is there now disagreement expressed by the parties on this point. The intent of those signatory to comprehensive agreements of this sort controls. See, *Bell v. Bell*, 390 Pa.Super. 526, 568 A.2d 1297 (1990); *D'Huy v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (1990). Here both the incorporation and the extent of judicial authority are specified, so that we are not constrained to regard the agreement as an order subject to unilateral modification by the court. Accordingly, the agreement is to be construed by application of accepted rules of contract law.

It is well settled that property settlement agreements between husband and wife will be enforced by the courts in accordance with the same rules of law which are used in determining the validity of contracts generally. *Vankirk v. Vankirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984); *DeWitt v. Kaiser*, 335 Pa.Super. 258, 484 A.2d 121, (1984); *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981); *Schmitz v. Schmitz*, 305 Pa.Super. 328, 451 A.2d

2. As we are concerned here with an action specifically directed at enforcement, it was properly brought under the 1988 Divorce Code, see *Jackson v. Culp*, 400 Pa.Super. 519, 583 A.2d 1236 (1990); *DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 582 A.2d 666 (1990).

555 (1982). To that end we must look to the terms of the contract when called upon to construe rights pursuant thereto. The contract must be construed only as written. If an agreement contains clear and unambiguous terms, a court may not modify the plain meaning of the word under the guise of interpretation. *Mears, Inc. v. National Basic Sensors, Inc.*, 337 Pa.Super. 284, 486 A.2d 1335 (1984).

*Trumpp v. Trumpp*, 351 Pa.Super. 205, 209, 505 A.2d 601, 603 (1985).

■■■ In determining whether the trial court has applied these principles properly, we use as a gauge the abuse of discretion standard. This is so because the form of action employed here, a petition for Special Relief, is authorized by Pa.R.C.P. 1920.43 relating to divorce or annulment.[3] A panel of this court has held that a grant of relief under this rule is within the sound discretion of the trial court and is an exercise of the court's equitable powers. *Jawork v. Jawork*, 378 Pa.Super. 89, 548 A.2d 290 (1988). An appellate court will not reverse absent an abuse of that discretion. *Id. See also, DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 582 A.2d 666 (1990).

■■■ Appellant claims the trial court to have erred in finding his obligation to pay for the children's tuition unaffected by the terms of the Trust. It is contended first that this conclusion is manifestly unreasonable in light of the parties' intent at the time the agreement was executed, an intent which is posited as an obligation dependent solely upon need. Appellant analogizes his situation to one in which a child chose not to attend college: were this to occur

3. Pa.R.C.P. 1920.43 SPECIAL RELIEF
    (a) At any time after the filing of the complaint, or petition setting forth facts entitling a party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security,
       (1) issue preliminary or special injunctions necessary to prevent the removal, disposition alienation or encumbering of real or personal property in accordance with Rule 1531(a), (c), (d), and (e); or
       (2) order the seizure or attachment of real or personal property; or
       (3) grant other appropriate relief.

no tuition obligation would exist.[4] Similarly, appellant continues, the existence of the Trust vitiates the need for tuition. To emphasize his insistence that need as a condition precedent represents the intent of the parties, appellant urges us to look beyond the mere words of the document.[5]

Conversely, in deciding whether the Trust was meant to hold primacy, appellant would have us give its terms their "clear and unambiguous meaning," (Appellant's Brief at 13) that is, to assume, since the language of the Trust does not mention support, that it is net only of scholarship aid of the institutional variety.

■ All of appellant's arguments in this regard are based upon the premise that the question before us is the primacy of payment as between the Trust and himself. However, this is a misconception. In fact, we need only decide whether the contract entered into by the parties is enforceable as written, not whether the Trust has any supercessive effect upon a preexisting agreement. The starting point of the analysis is, despite appellant's pleas to the contrary, the language of the contract.

The specific language of the pertinent agreement section provides as follows:

*HIGHER EDUCATION EXPENSES OF THE CHILDREN*

4. Interestingly, this possibility was provided for as concerns reduction of alimony payments to appellee upon each child's entrance into college.

5. In this regard, appellant refers us to testimony of various witnesses elicited at the hearing on his Petition. No transcript of the hearing is contained in the official record; no docket entry indicates that it was ever filed. Its presence in the Reproduced Record is insufficient to satisfy the requirements of PA.R.App.P.1921, which provides that the record on appeal in all cases shall consist of the "original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court." For purposes of appellate review, what is not of record does not exist. *See, Ritter v. Ritter,* 359 Pa.Super. 12, 518 A.2d 319 (1986); *General Accident Fire & Life Assurance Corp., Ltd. v. Flamini,* 299 Pa.Super. 312, 445 A.2d 770 (1982); *Dile v. Dile,* 284 Pa.Super. 459, 426 A.2d 137 (1981).

Husband agrees to be solely responsible for the reasonable cost of undergraduate education for the children including but not limited to the following: tuition, room, board, books, supplies, fees, a reasonable spending allowance and transportation, provided however, that Husband's obligation with respect to transportation shall be limited to three round-trips per year per child, the cost of which shall be actual cost or the cost of the least expensive round trip airflight to Pittsburgh, whichever is less. Husband's obligation pursuant to this Paragraph is limited to the cost of schooling as if the child attended Penn State University, Temple University, or the University of Pittsburgh, at the time the parties' children are enrolled in school. Any contribution by Husband to the children's educational costs above and beyond costs comparable to the above listed Universities shall be made on a voluntary basis. If a child lives at home and commutes to school, Husband's obligation shall be limited to tuition, books, fees and supplies. Husband can take advantage of interest-free or low interest loans (e.g. PHEAA) as long as he is responsible for and assumes the obligation of repaying the loan with applicable interest.

No qualifiers are present in this section or elsewhere in the contract making appellant's obligation contingent upon need, or secondary to some other source of funding for educational expenses. The agreement contains express language designating its terms as a complete expression of the parties' intent, and specifically states, "There are no representations or warranties other than those expressly set forth herein." (Agreement, 36) Both parties had benefit of counsel (appellant himself is an attorney), and there is no claim that the agreement itself was the product of fraud, misrepresentation, coercion or duress. There is, in short, nothing to suggest otherwise than the most obvious interpretation. As this court has stated, albeit in another context:

Appellant is attempting to create an ambiguity by parol evidence where the agreement is not ambiguous on its

face, an effort barred by the parol evidence rule. *Dahath Electric Co. v. Suburban Electric Development Co.*, 332 Pa. 129, 132, 2 A.2d 765 (1938). In order for us to find an ambiguity in the agreement, we must find that the document is reasonably capable of two different interpretations. *Foulke v. Miller*, 381 Pa. 587, 595, 112 A.2d 124 (1955). We agreed with the implicit determination by the court below that no such ambiguity exists.

*Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Super. 252, 259, 404 A.2d 398, 401 (1979). *See also, Rosenberg v. Rosenberg*, 322 Pa.Super. 293, 469 A.2d 626 (1983). *Compare, Kohn v. Kohn*, 242 Pa.Super. 435, 364 A.2d 350 (1976) (parol evidence admitted to resolve ambiguity where the term "alimony" may have been intended to include child support).

As there is nothing problematical contained in the agreement concerning the extent of appellant's obligation to pay his children's education expenses, we need not address the construction of the Trust's intention.

Appellant's second assertion, consistent with his previous claim, and all of those that follow, assumes resolution of the first argument in his favor. He complains that given the lack of need for tuition in view of the Trust's contribution, those payments he has made resulted in appellee's unjust enrichment, which under equitable principles should be remedied. Despite appellant's insistence to the contrary, the trial court's characterization of this matter as a contract dispute rather than a weighing of the equities is correct. Again, contracts are evaluated by certain specific criteria. Absent fraud, duress, misrepresentation or some other element which signals invalidity, both parties are bound by the terms of their agreements, "irrespective of whether the agreements embodied reasonable or good bargains." *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990).

Further, everyone who enters a long-term agreement knows that circumstances can change during its term, so

that what initially appeared desirable might prove to be an unfavorable bargain. Such are the risks that contracting parties routinely assume.

*Id.,* 525 Pa. at 401, 581 A.2d at 167.

Appellant's current contention, based on a citation to *In re McClellan's Estate,* 365 Pa. 401, 75 A.2d 595 (1950) (antenuptial agreement invalidated based on fraudulent concealment of husband's assets at the time of making) that appellee's failure to inform him of the Trust's existence constitutes a generic form of fraud, is unconvincing. Appellant failed to provide for the possibility that there might be some contributor to his children's education other than himself. He has never claimed that any action on appellee's part prevented him from doing so.[6] Under these circumstances, appellee was under no obligation to notify him that she had received funds from the Trust. He will not now be heard to complain because he dislikes the bargain he made.

Next, appellant extrapolates on the above by asserting that the trial court erred in failing to find appellee in contempt of the agreement for failure to notify him of the the Trust's expenditures. For the reasons already stated, we find this claim meritless.

Finally, appellant assigns error to the trial court's refusal to order returned to him those sums expended on behalf of the children's education. Specifically, appellant complains that he is owed $10,888, the amount in excess of tuition payments made by the Trust, and $1,615, the room and board fees expended by appellant for the parties' elder son

---

**6.** As we have already noted in Footnote 4, appellant did provide for various contingencies affecting his obligation to pay alimony. Paragraph 20(d) of the agreement provides that the amount paid to appellee will be reduced by 25% as each child begins college, except where the child continues to live at home as a student. College is defined as "undergraduate school on a four-year consecutive basis," and the agreement specifies that should a child not attend college or its equivalent as a full time student, alimony will nevertheless be reduced as if the child were attending. This section also provides for cessation of alimony altogether upon the occurrence of any one of several events.

Kenneth for a semester during which he failed to attend school.

Insofar as the overage is concerned, appellant has no valid claim to its return. We find the trial court's citation to *Wertz v. Anderson*, 352 Pa.Super. 572, 508 A.2d 1218 (1986) *alloc. dn.* 514 Pa. 625, 522 A.2d 51, particularly instructive on this point. There, a panel of our court held that the appellant was not relieved of his contractual obligation to pay child support where the funds had been expended, but rather than being paid directly to appellee as the separation agreement required, were made to the children themselves, or to individuals or schools on their behalf. The analogy is clear. In this instance, as the Trust in nowise alters appellant's obligation under the agreement, he is due no refund of money expended.

Insofar as the room and board for Kenneth are concerned, appellee avers in her answer to appellant's petition that the amount due and owing to the university where Kenneth was enrolled exceeded the amount paid by appellant, whose recourse for return of this money is to the university itself.[7] As appellant is by the terms of the agreement responsible for more than tuition, and as he admits, money advanced by him was used for the children's expenses, despite appellee's having "pocketed" it, he may expect no return of these funds either.

Order affirmed.

---

**7.** Appellant's averments are supported by references to the transcript which has been *excluded* from our review. See, Footnote 5, *supra.*