**Harrison-Chizkov v. Chizkov**

*Deborah Zitomer,* for appellee.
*William Ehrich,* for appellant.

CARPENTER, *J.,* November 15, 1995—

### FACTS AND PROCEDURAL HISTORY

Meisha Chizkov, appellant, appeals an order of this court, which after a hearing held on June 20, 1995, ordered him to list for sale the property located at 707 Spring Avenue, Fort Washington, Montgomery County, Pennsylvania. The appellant resided at this property

with his wife, Pamela Harrison-Chizkov, appellee, and their two minor children. The parties purchased the property in 1989, with the title jointly held in the appellant and appellee's names. In addition to the marital residence, the marital estate includes another property located in Philadelphia,[1] as well as automobiles, and various items of personal property, including a collection of racing bicycles.

In the spring of 1994, problems with the parties' marital relationship had grown to the point that the parties decided that they would end the marriage. To this end the parties discussed various options concerning their property and living arrangements in an effort to minimize the emotional as well as the financial strain on the entire family. They ultimately decided that they would list the marital residence for sale, and that upon its sale they would split the net proceeds and purchase separate housing. They further decided that to accomplish this, the appellant would remain in the marital residence.

Over the course of the next several months the appellee continued in her reliance on their plan. The appellant told her that the marital property would have a higher resale value if they repainted it, so the parties contacted several painting contractors, to get estimates for the job. While the estimating was going on the appellant told the appellee not to mention that they were going to sell the house, because he felt that information would cause the painters to increase the price of the work. Finally the parties chose a painter, and contracted for the work. At the request of the appellant,

---

1. The parties' second property is located at 640 Naomi Street, Philadelphia, PA. It is a rental property, that currently is generating income from a lease with two tenants. There is no mortgage on this property.

the appellee deposited two large checks that she had received from her employer, into the parties' joint account, so that they could pay for the painting. As the painting progressed the parties began to look for replacement housing. They made several trips with a realtor, and looked at some homes, but they still had not listed their property for sale at this time.

As the start of the next school year approached the appellee wanted to be settled, so that the transition would be lessened on the children. The painting job had not yet been completed and the appellee realized that they would not complete the sale of the house by September, so after discussion with the appellant, it was decided on June 15, 1994, that she would vacate the house and move into an apartment. A few days after she left the property, the appellant informed her that despite their agreement he was not going to sell the house.

On October 7, 1994, the appellee filed a petition for special relief, seeking inter alia, that the appellant be directed to comply with the terms of the agreement he entered into with the appellee. On June 20, 1995, a hearing was held before this court, and after a full day of testimony, we found that there was in fact an oral agreement to list the marital residence for sale, and that the appellee had relied on the agreement. Further we ordered that the property be listed for sale forthwith and the parties cooperate in effectuating the sale.

Within a month of the order, the appellant had filed a notice of appeal to the Pennsylvania Superior Court and a petition for reconsideration of the trial court's order. After argument on the petition for reconsideration, this court, on August 15, 1995, denied the appellant's petition, and the appellant's appeal followed.

## ISSUES

(1) Whether this appeal should be quashed for being interlocutory?

(2) Whether this court applied the proper standard for an award of interim relief in a divorce action?

(3) Whether this court properly found that the parties entered into a valid agreement to sell the marital residence and divide the proceeds?

## DISCUSSION

### 1. *This Appeal Should Be Quashed As Being Interlocutory*

Before the Superior Court can reach the merits of the appellant's claims it must first determine that the order from which the appellant appeals is final and would dispose of the entire litigation. In the instant dispute, the June 20, 1995 order of this court does not dispose of the entire litigation.

Currently, the parties have filed a complaint in divorce, however there has not been a final divorce decree nor has there been a final equitable distribution of the marital estate. The law of the Commonwealth is well settled in this area. "It is clear that an appeal will lie only from a final order unless an appeal is otherwise permitted by statute or rule of [the] court." *Schwartz v. Schwartz,* 411 Pa. Super. 282, 284, 601 A.2d 349, 351 (1992). The *Schwartz* court, citing the Pennsylvania Supreme Court in the case of *T.C.R. Realty Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977), goes on to define "final order" as, "one which ends the litigation or, alternatively, disposes of the entire case." *Id.*

The reasoning that the Superior Court relied on in the *Schwartz* case sits squarely on point with the facts in the case sub judice. In *Schwartz,* the court stated, "The order in the instant case does not end the litigation or alternatively, dispose of the entire case. The divorce action remains unfinished because there has been no final distribution of marital property." *Id.* Similarly, in the case sub judice there has been no divorce decree entered, nor a final distribution of marital property, thus our order did not end the litigation either.

It also should be noted that this dispute can be distinguished from the situation where the parties have only one marital asset, namely the marital residence. In this case the marital residence at 707 Spring Street, is not the sole asset of the marital estate. There is also a property at 640 Naomi Street, Philadelphia, PA that the parties use as a rental property, and that is currently generating rental income. Had the marital residence been the sole marital asset, then this court would agree that its order has the effect of disposing of the litigation between the parties and the appeal could possibly be considered final, but since a final equitable distribution is still pending, any inequity can be remedied at that point.

Therefore, based on the fact that there has been no final decree of divorce or a final equitable distribution ordered, the appellant's claim is one that does not dispose of the litigation and is interlocutory. As a result the Superior Court should quash the appellant's appeal.

## 2. *This Court Applied the Proper Standard for an Award of Interim Relief in a Divorce Action*

Assuming that the Superior Court finds our order to be a final appealable order, the appellant's claims should nevertheless be dismissed. The appellant asserts

that this court did not have the authority to enter the type of order that it did based on the harm that the appellee was alleging. (Statement of matters complained of on appeal, p. 2.) In light of several recent holdings by the Superior Court, this assertion is without merit. See *Romeo v. Romeo,* 417 Pa. Super. 180, 611 A.2d 1325 (1992); *Frank v. Frank,* 402 Pa. Super. 458, 587 A.2d 340 (1991). In the *Frank* case, the Superior Court stated: "a petition for special relief, is authorized by Pa.R.C.P. 1920.43 relating to divorce or annulment. A panel of this court has held that a grant of special relief under this rule is within the sound discretion of the trial court and is an exercise of the court's equitable powers. *Jawork v. Jawork,* 378 Pa. Super. 89, 548 A.2d 290 (1988). An appellate court will not reverse absent an abuse of that discretion." *Id.* at 462, 587 A.2d at 342. (citation omitted) (footnote omitted)

In addition to Pa.R.C.P. 1920.43, it also can be argued that 23 Pa.C.S. §3323(f) brings this dispute within our equity power. 23 Pa.C.S. §3323(f) *Equity power and jurisdiction of the court* provides:

"In all matrimonial causes, the court shall have full equity power and may issue injunctions or other orders which are necessary to protect the interest of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause, would bring this dispute under the equity power of this court."

Due to the fact that the grant or denial of special relief rests upon the equitable power of the court, and thus is within its sound discretion, the appellate courts give the trial court's determination as to the credibility of witnesses wide deference. In the case of *Dudash*

*v. Dudash,* 313 Pa. Super. 547, 460 A.2d 323 (1983), the Superior Court stated, "that the scope of appellate review of a decree in equity is particularly limited . . . . Where credibility of witnesses is important to a determination, the findings of the chancellor are entitled to particular weight because the chancellor has the best opportunity to observe their demeanor." *Id.* at 552, 460 A.2d at 326.

In the instant dispute the credibility of the witnesses did play a significant role. The appellee testified that the appellant had started to become physically abusive.

"Q. Tell his honor that in terms of the physical situation . . .

"A. Well, the last incident was over a stucco incident. We had gotten one side of our house stuccoed because it had a lot of damage to it. And when Meisha was at work, I made the decision—I probably should have called him, but I made the decision on the design of the stucco. He came home and he told—we ended up on the second floor and he shook me—threw me down in the bed and he was so mad at me that I didn't include him in the decision. He said, 'don't you fuck with me bitch' and he was throwing me around on the bed." (N.T., 6-20-95, p. 14.)

She further testified that as a result of their marital problems they were going to terminate their marriage. In anticipation of the divorce the appellee testified that she and the appellant agreed orally to put the marital residence up for sale, and purchase replacement houses:

"Q. And what was the decision with respect to 707 Spring Avenue? What did you decide to do, the two of you, if anything?

"A. Okay. Well, we decided that we were going to sell the home and buy new houses and pay off the debt that we—the debts, you know, that we owed. . . .

"Q. Now you indicated that they first started in terms of a discussion or a decision a few months before you left . . . Did you have continuing discussions to confirm that understanding after you started that discussions?

"A. Oh, yes. We even went as far as to hire painters for the house." (N.T., 6-20-95, pp. 10-11.)

In contrast the appellant testified that he never agreed to sell the house, because he felt it was not economically viable.

"Q. So did you discuss with her that you might consider selling house? What were the contents of those discussions with her in the spring of 1994?

"A. Pamela was very eager to sell the house and I was always opposing to that . . . And any way you look at that, it just a bad deal for both of us because in the end we lose money, and we get an inferior place, and our children are out of their birth home." (N.T., 6-20-95, p. 96.)

Despite his alleged opposition to the sale, this court found it significant that the appellant still went with a realtor to look at other smaller homes. He also hired painting contractors, which the appellee paid for, to repaint the paoperty, and finally allowed the appellee to vacate the premises while the painting was still on-going, relying on the agreement between them.

After listening to this testimony and viewing the demeanor of the witnesses, we came to the conclusion that the appellant and the appellee had come to an agreement regarding the sale of the marital residence. In short we found the appellee to be more credible than the appellant.

Once we had determined that the parties had agreed to sell the marital residence, we then fashioned an order that would be equitable for both parties, in light of their agreement. Our result was to allow the appellant to remain in the marital residence, but that he was to list the property for sale forthwith, and to cooperate in the selling of the house.

3. *This Court Properly Found That the Parties Entered Into a Valid Agreement To Sell the Marital Residence and Divide the Proceeds*

Once we made the determination that the parties had in fact orally agreed to sell the marital property, the next question before us regarded the agreement's validity in light of the statute of frauds, 33 Pa.C.S. §1. This statute provides, "No lease made or created for a term of more than three years or other estate or interest in land, may be assigned, granted or surrendered, except in a writing signed by the party assigning, granting or surrendering same, or his agent authorizing in writing, by act in operation of law." 33 Pa.C.S. §1. The Pennsylvania Supreme Court, in the case of *Hessenthaler v. Farzin,* 388 Pa. Super. 37, 564 A.2d 990 (1989), set out the purpose of the statute of frauds to be: "to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest . . . . Pennsylvania courts have emphasized that the statute is not designed to prevent the performance or enforcement of oral contracts that in fact were made." *Id.* at 41-42, 564 A.2d at 992. (citations omitted) (emphasis in original)

It is uncontroverted that the parties never executed any writings to evidence their agreement. Therefore,

the agreement sub judice is controlled by the statute of frauds. However, in applying the statute of frauds the courts of this Commonwealth recognize that it can often times yield inequitable results, therefore in an effort to temper this potentially harsh rule the courts of this Commonwealth have developed a narrow exception. If a party against whom the statute is being used can show that they performed their duty in reliance on the agreement the contract will be excepted from the statute of frauds. The Supreme Court of Pennsylvania in *Kurland v. Stolker,* 516 Pa. 587, 533 A.2d 1370 (1987) set out the test to be used when taking an oral agreement outside the statute of frauds. In *Kurland* the Pennsylvania Supreme Court stated:

"Our case law is very explicit as to the requirements which must be met to take an oral contract for real estate out of the statute. The terms of the contract must be shown by full, complete, and satisfactory proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration. It must establish the fact that possession was taken in pursuance of the contract, and, at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust." *Id.* at 592, 533 A.2d at 1373.

When this court applied the above test to the parties, it found that their actions removed their agreement from the control of the statute of frauds. Their agreement was not complex. They would sell their marital residence that was jointly titled and after paying debts they would split the proceeds. This type of agreement is ubiquitous

when married parties decide to divorce, therefore it is clearly reasonable in light of the parties' situation. The second prong of the *Kurland* test is also met, because the parties had only one marital residence, and although they testified that they had lived at the Naomi property for a time prior to the birth of their children, both were aware the property subject to the agreement was the 707 Spring Avenue location. The third prong of *Kurland,* that possession was taken in pursuance of the agreement, is similarly met. While the appellant could argue that he took exclusive possession as a result of the separation, we do not agree. The appellee testified that at the time she left they were painting the house, because the appellant suggested that it would bring a greater sale price. She further testified that she paid for the work. In addition, she testified that she and the appellant had begun to look at other houses of a size and price that was consistent with their agreed plans, and that after removing some of her possessions the appellant changed the locks on the doors. Based on this credible testimony, we found that under the circumstances the appellee left the marital residence with her children, in reliance on the agreement with the appellant. Finally, *Kurland* requires that money damages cannot compensate the party relying on the agreement. The appellant asserts that an award of money damages could make the appellee whole, notwithstanding the fact that this assertion buttresses our claim that the appeal is untimely, we disagree. As the appellee testified, it was the appellant's abusive behavior that ultimately led to the breakup. Additionally, he agreed to sell their marital residence, and proceeded under that guise until the appellee moved out, then he unilaterally reversed his position. Therefore it would be speculative at best to arrive at a dollar amount to fairly

compensate the appellee, and as a result equity would prevent this court from allowing the appellant to reap a benefit from his own reprehensible conduct.

In conclusion, before the Superior Court can reach the merits of the appellant's claims, it must first determine that the order from which the appellant appeals is final or would end the litigation between the parties. In the instant dispute this court's order fails to reach this objective. However, even if this order were a final order and the Superior Court could reach the merits of the appellant's claim, this type of dispute affords this court broad discretion, under its equity power to fashion appropriate relief. Therefore after listening to the testimony of the parties, we found that in contrast to the appellant, the appellee provided credible testimony to this court as to the agreement that she and the appellant entered into. We further found that as a result of the appellee's detrimental reliance on the agreement, that it removed it from the control of the statute of frauds.

## CONCLUSION

Based on the foregoing analysis the appellant's appeal should be *quashed* as being interlocutory, and in the alternative this court's order of June 20, 1995 should be *affirmed*.