J-S24022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREW J. MCCOLLIN | : | |
| | : | |
| Appellant | : | No. 1198 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002971-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREW J. MCCOLLIN | : | |
| | : | |
| Appellant | : | No. 1199 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004595-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREW J MCCOLLIN | : | |
| | : | |
| Appellant | : | No. 1200 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 29, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004596-2019

J-S24022-23

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:            **FILED: NOVEMBER 7, 2023**

Andrew J. McCollin appeals from the judgments of sentence, entered in the Court of Common Pleas in Berks County, after a jury convicted him in a consolidated trial[1] of one count each of aggravated indecent assault of a child[2] and aggravated indecent assault,[3] and three counts each of endangering the welfare of children (EWOC),[4] institutional sexual assault in child care,[5] indecent assault,[6] and corruption of minors.[7]  After review, we affirm.

This case stems from sexual assault allegations made by three pre-school-aged boys (collectively, Children) against McCollin, the assistant director of a daycare center that the boys attended.  The daycare center,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Dockets CP-06-CR-0004595-2019 (No. 4595-2019), CP-06-CR-0004596-2019 (No. 4596-2019), CP-06-CR-0002971-2020 (No. 2971-2020).  McCollin has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), by filing separate notices of appeal for each trial court docket number.  **See id**. at 971 (holding "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases").

[2] 18 Pa.C.S.A. § 3125(b).

[3] **Id.** at § 3125(a)(7).

[4] **Id.** at § 4304(a)(1).

[5] **Id.** at § 3124.2(a.3).

[6] **Id.** at § 3126(a)(7).

[7] **Id.** at § 6301(a)(1)(ii).

- 2 -

Bright Horizons Daycare Center Creative Learning Center (Bright Horizons), is located in in Bern Township. McCollin served as the assistant director of Bright Horizons in 2018 and 2019. During that time, McCollin would often supervise, alone, naptime in classrooms so that the teachers could take breaks.

Beginning in August of 2019, three children disclosed that McCollin had touched them inappropriately. N.G. (born 1/2015),[8] was the first to disclose McCollin's assault and testified that, when he was four years old, McCollin touched his penis under his clothes in a back-and-forth manner, as well as his butt, a "couple of times," during naptime. N.T. Jury Trial, 9/21/21, at 87-90. C.C. (born 7/2014),[9] was the second child to disclose inappropriate touching by McCollin, and testified that when he was four years old, McCollin touched his penis under his clothes, on more than one occasion, during naptime. *Id.*, 9/22/21, at 227. N.H. (born 12/2014),[10] was the third child to disclose and he testified that when he attended Bright Horizons, McCollin rubbed his backside and touched his penis both over and under his clothes, one time, during naptime. *Id.* at 150-54, 160.

On August 23, 2019, N.G. disclosed the sexual assault incidents to his mother, B.G., while the family was shopping for back-to-school items. *Id.*, 9/21/21, at 93. N.G. informed B.G. and her husband that "Andrew [McCollin]

---

[8] No. 4596-2019.

[9] No. 4595-2019.

[10] No. 2971-2020.

touched my peener" during naptime. *Id*. Upon returning home, B.G. asked N.G. to tell her again what happened at school that day; N.G. again reported that "Mr. Andrew touched [my] peener" during naptime. *Id.* at 94.

The same day N.G. told his mother, B.G. called Bright Horizon's school director, Erin Harner. *Id.* at 90, 93-94. Harner then contacted her supervisor, Bright Horizon's regional manager, Kaitlin Martin. On August 24, 2019, Martin informed McCollin that there was an incident and that he was being placed on administrative leave. *Id.* at 77-78; *id.*, 9/22/21, at 216-18. K.S., N.G.'s classroom teacher, testified that on August 23, 2019, she had been the only teacher in the classroom. During naptime, she moved N.G. to a different cot away from most of the other children because he was talking. *Id.*, 9/22/21, at 137-38. K.S. then left the room for approximately thirty minutes while McCollin supervised the classroom naptime. *Id.* at 138-39. When K.S. returned to the classroom, she observed McCollin standing near N.G.'s cot. *Id.* at 139-40.

Following his disclosure, N.G. was interviewed by staff at the Children's Alliance Center of Berks County (CAC), a service of the Berks County District Attorney's office that interviews and supports child victims of sexual abuse.[11] *Id.*, 9/21/21, at 104-07. A report of N.G.'s interview was provided to law enforcement and Corporal Detective Heather Calabria of the Berks County

---

[11] *Children's Alliance Center of Berks County*, County of Berks, https://www.countyofberks.com/departments/da/children-s-alliance-center (last visited Oct. 12, 2023).

District Attorney's Office contacted McCollin to ask if he would be willing to speak with her. McCollin agreed and met with Detective Calabria on August 28, 2019. During the interview, McCollin initially denied the allegations, but later admitted to touching N.G.'s penis underneath his clothes. McCollin also admitted to inappropriately touching C.C. *Id.*, 9/23/21, at 289-94. Based on McCollin's admission regarding a second victim, law enforcement and Berks County Children and Youth Services (CYS) reached out to C.C.'s family.[12] *See id.*, 9/22/21, at 237-38, 264.

CAC staff interviewed C.C. on or about September 3, 2019. Initially, C.C. did not disclose any sexual abuse. *Id.* at 238, 266. However, when C.C. and his parents were leaving the CAC, C.C. asked why no one asked him questions about McCollin. C.C. then revealed to his parents that McCollin touched his penis and anally penetrated him with his fingers. *Id.* at 238-39, 254. C.C.'s mother, W.C., testified that while the family was in the parking lot following C.C.'s interview with the CAC, he informed her and her husband that McCollin had "stuck his finger up [C.C.'s] butt" and that "it hurt." *Id.* at 239. C.C. stated to his parents that this happened "every naptime." *Id*. C.C.'s father testified that C.C. told him that he "was strong" and "didn't cry." *Id.* at 254. At that point, C.C.'s father told him that he did not have to be strong and that he should "tell [his father] honestly what happened" when he was ready. *Id*.

---

[12] Jennifer Hack, a CYS caseworker, initially met with C.C. and his family after McCollin made his statement to Calabria.

C.C. was interviewed a second time at the CAC, this time by CYS caseworker Hack, to whom he repeated the same information he told his parents. *Id.* at 263-65, 267. Additionally, Renee Riddle, M.D., examined all three minor victims, on behalf of the CAC, on separate occasions in September or October 2019. *Id.* at 247-48. When C.C. was alone with Dr. Riddle, he disclosed that "Mr. Andrew" was "touching his penis and butt" and told Dr. Riddle that he experienced some pain and that the touching happened multiple times during naptime. *Id.* at 249. C.C. also testified that one time in particular, McCollin "stuck his finger in his butt" and C.C. saw "poop" on McCollin's finger when he removed it. *Id.* at 227-29.

On August 30, 2019, Bright Horizons informed parents about the allegations against McCollin. Following that relay of information, B.H. spoke to her son, the third victim, N.H., to determine whether anything occurred between N.H. and McCollin. *See id.* at 169. On September 2, 2019, while N.H.'s mother was putting him to bed, N.H. asked his mother to rub his back. When B.H. asked N.H. if anyone else rubbed his back, N.H. told her that McCollin would rub his back. *Id.* at 162-64. N.H. then told B.H, that, during naptime, McCollin would rub N.H.'s back under his shirt, rub his behind over his shorts "a lot," and "poked" his penis over his underwear. N.H. informed B.H. that McCollin only touched his penis twice. *Id.* at 164-67. B.H. testified that, after her initial conversation with N.H. about "Mr. Andrew," she spoke to him several more times about it, either when N.H. brought it up unprompted or when she initiated further conversation about the touching. *Id.* at 168.

Following this disclosure, B.H. brought N.H. to law enforcement for a forensic interview. At the first interview in October of 2019, N.H. did not disclose the assault to law enforcement. *Id.* at 185. Sometime in late fall of 2019, N.H. disclosed the assaults to his teacher, T.L. *Id.* at 258-60. T.L. was reading a book to the class and teaching vocabulary words, including the word "principal." T.L. asked the students if they knew the principal at Bright Horizons, at which point the children identified "Ms. Erin," the director of Bright Horizons, and "Mr. Andrew," identified by T.L. as McCollin. N.H. then announced to the entire class that McCollin touched his penis and his behind. T.L. reported this disclosure and N.H. was interviewed by law enforcement a second time in July 2020. *Id.* at 185-86, 259-62. During this second interview, N.H. revealed that McCollin touched him on several occasions during naptime, touching his penis under his clothes, and rubbing his back and behind. *Id.* at 186-87. N.H. also identified McCollin in a picture provided to him by law enforcement. *Id.* at 188.

On May 25, 2021, prior to trial, the trial court held a hearing pursuant to the Tender Years Act, 42 Pa.C.S.A. § 5985.1 (the Act),[13] in response to

_____

[13] The Tender Years Act provides, in relevant part, as follows:

   (a)   General rule. --

      (1)  An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph

*(Footnote Continued Next Page)*

_____

(2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

(2) The following offenses under 18 Pa.C.S.[A.] (relating to crimes and offenses) shall apply to paragraph (1):

. . .

Chapter 31 (relating to sexual offenses).

. . .

Section 4304 (relating to [EWOC]), if the offense involved sexual contact with the victim.
Section 6301(a)(1)(ii) (relating to corruption of minors).

. . .

(a.1) Emotional distress. -- In order to make a finding under subsection (a)(1)(ii)(B) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

_(Footnote Continued Next Page)_

several motions filed by the Commonwealth. For each of the three dockets, the Commonwealth filed notices of its intent to introduce out-of-court statements made by the child victim. Subsequently, the Commonwealth filed a motion under each docket requesting that the testimony of the three minor victims be by closed circuit television pursuant to section 5985. *See* 42 Pa.C.S.A. § 5985. At the hearing, the Commonwealth presented each witness it intended to call to testify pursuant to the Act. On May 27, 2021, following the hearing, the trial court ordered that C.C.'s and N.H.'s testimony be made pursuant to a contemporaneous alternative method, after concluding that testifying in the defendant's presence would cause the minor victims to suffer

_____

(a.2) Counsel and confrontation. -- If the court hears testimony in connection with making a finding under subsection (a)(1)(ii)(B), all of the following apply:

(1) Except as provided in paragraph (2), the defendant, the attorney for the defendant and the attorney for the Commonwealth or, in the case of a civil proceeding, the attorney for the plaintiff has the right to be present.

(2) If the court observes or questions the child, the court shall not permit the defendant to be present.

(b) Notice required. -- A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1.

serious emotional distress and, thus, would impair their ability to reasonably communicate. **See** Trial Court Order, 5/27/21. The trial court order also allowed for the presentation of Tender Years testimony in each case, permitting testimony of out of court statements made by Children to specific persons. **See** Trial Court Order (II), 5/27/21. **See also** Trial Court Opinion, 12/16/22, at 6, 9.

On September 23, 2021, at the conclusion of a three-day jury trial, McCollin was convicted of the above-mentioned offenses. **See** N.T. Jury Trial, 9/23/21, at 405-10. Sentencing was deferred to allow for the Sexual Offenders Assessment Board (SOAB) to complete an evaluation. **Id.** at 413-14. On March 29, 2022, the trial court held a hearing after which it found that McCollin met the criteria to be classified as a Sexually Violent Predator (SVP), and, thus, was subject to the requirements of the Sexual Offender's Registration and Notification Act (SORNA).[14] **See** N.T. Sentencing Hearing, 3/29/22, at 19. The trial court sentenced McCollin to an aggregate term of 34 to 68 years of incarceration, followed by 40 years of probation. **Id.** at 51.

On April 6, 2022, McCollin timely filed post-sentence motions raising weight and sufficiency of the evidence claims and seeking modification of his sentence. On August 2, 2022, following a hearing, the court denied the motions. McCollin timely filed notices of appeal and a court-ordered Pa.R.A.P.

---

[14] 42 Pa.C.S.A. §§ 9799.10-9799.75 (Subchapter H).

1925(b) concise statement of errors complained of on appeal. McCollin raises the following issues for our review:

> [1.] Did the lower court improperly allow remote audiovisual testimony from child-victim C.C., and hearsay-based evidence under the "tender years" exception, without which many of [McCollin's] convictions, and all of [McCollin's] convictions pertaining to C.C.'s docket, would have no evidentiary ground to stand on?
>
> [2.] Were [McCollin's] convictions based on legally insufficient evidence, where (1), if the remote audiovisual testimony and "tender years" testimony regarding C.C. were improperly admitted, there were no other facts on record from which any offense against C.C. could be inferred; (2) [McCollin] was never identified by the victims in court as the perpetrator, and no evidence excluded the possibility of an alternative male perpetrator; and (3), even if [McCollin] was the male who touched the [C]hildren, he did not do so intentionally, or otherwise inappropriately, i.e. for sexual gratification or out of specifically prurient curiosity?
>
> [3.] Did the verdicts otherwise go against the weight of the evidence, given the unreliability of the [C]hildren's testimony, the incredibility of the parents' testimony, and the plausible exculpatory explanations offered by [McCollin]?
>
> [4.] Did the lower court abuse its discretion in imposing what was very nearly in practical effect a life sentence on [McCollin] where it noted only one adverse factor and failed to consider the [pre-sentence investigation] report[15] and other mitigating circumstances such as [McCollin's] lack of criminal history, his middle age and his favorable reputation in the community?

Appellant's Brief, at 7-8.

---

[15] A review of the record suggests there was no pre-sentence investigation (PSI) report; there was, however, an SOAB report upon which the court made an SVP determination.

As an initial matter, we note that an appellant must provide a complete record for review. Moreover, this court is limited to considering only those materials contained in the certified record on appeal. *See* Pa.R.A.P. 1921. *See also Frank v. Frank*, 587 A.2d 340, 342 n.5 (Pa. Super. 1991). Recently, this Court stated:

> With regard to transcripts, our Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary for resolution of the issues appellant raises on appeal. *See* Pa.R.A.P. 1911(a). When an appellant fails to adhere to the precepts of Rule 1911 and order all necessary transcripts, any claims that cannot be resolved in the absence of the necessary transcripts or transcripts must be deemed waived for the purpose of appellate review.

*In the Interest of G.E.W.*, 233 A.3d 893, 899-900 (Pa. Super. 2020) (citations omitted).

Here, a thorough review of the record of the three dockets indicates that the May 25, 2021 pre-trial hearing, regarding the Commonwealth's motions to allow the minor victims to testify via remote video and to allow tender years testimony for each of the victims, was never made part of the record.[16] McCollin, as the appellant, was responsible for requesting the transcript. Therefore, we are unable to conduct a meaningful review of McCollin's first claim pertaining to the minor victim C.C. We are also unable to meaningfully

---

[16] We note that a review of the court sheet from the hearing reflects that a stenographer was present at the hearing, suggesting that the hearing could have been transcribed upon a request from either counsel. *See Interest of G.E.W.*, *supra*; *see also* Pa.R.A.P. 1911(a); *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) ("responsibility rests upon the appellant to ensure that the record certified on appeal is complete").

review the first part of McCollin's second claim, that his conviction was based on legally insufficient evidence in C.C.'s case, because the remote testimony and tender years testimony were improperly admitted. Therefore, McCollin's claims as to improper allowance of remote testimony and tender years testimony with respect to C.C. are waived.

Though the first portion of McCollin's second claim is waived, we are able to address McCollin's remaining argument of his second claim—that the evidence was insufficient to sustain his convictions.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. **Commonwealth v. Randall**, 758 A.2d 669, 674 (Pa. Super. 2000). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Swerdlow**, 636 A.2d 1173, 1176 (Pa. Super. 1994) (citation omitted). **See also Commonwealth v. Chmiel**, 639 A.2d 9, 10-11 (Pa. 1994). Furthermore, "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." **Commonwealth v. Moore**, 648 A.2d 331, 333 (Pa. Super. 1994) (citations omitted). Moreover, the fact that the evidence establishing a defendant's

participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn therefrom, overcomes the presumption of innocence. **Commonwealth v. Stays**, 40 A.3d 160, 167 (Pa. Super. 2012) (citation and quotation omitted). Finally, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the convictions will be upheld. **Id**.

McCollin makes two sufficiency arguments: first, he argues that he was never identified in court by Children as the perpetrator, and no evidence excluded the possibility of an alternative male perpetrator; second, McCollin claims that, even if he was the person who touched Children, he did not do so intentionally or otherwise inappropriately.

With regard to his first sufficiency claim, McCollin argues that there was insufficient evidence to prove that he committed the alleged crimes against the minor victims where his mere presence at or near the scene of a crime is not sufficient to predicate a conviction. Specifically, McCollin points to testimony that he was in the classroom during naptime on the days of the alleged assaults, but that none of the minor victims could identify him in court as the person who assaulted them. Rather, they could only state that they were touched by a "Mr. Andrew." Appellant's Brief, at 41-42. McCollin asserts that Children could have been assaulted by an "unknown or little-known male passing through the naptime area," or some "unremembered male employee

- 14 -

who sometimes interacted with the children." *Id.* at 42. Finally, he supports this claim with the fact that because Children were only four or five years old at the time of the assaults, they could have misidentified the perpetrator by mixing them up or confusing names and faces, particularly given the traumatic nature of the assaults. *Id*. We find no merit to this claim.

Instantly, there was additional circumstantial evidence, in the form of testimony, identifying McCollin as the perpetrator. Erin Harner, the director of Bright Horizons, testified that not only was McCollin often assisting in classrooms during naptime, but he was also the **only** male teacher at Bright Horizons. *See* N.T. Jury Trial, 9/21/21, at 74-75. The only other male Bright Horizons' employee, who was not named Andrew, never assisted in classrooms and only interacted with the children in passing. *Id.* at 75. K.S., N.G.'s classroom teacher, testified that on the date N.G. reported the assault, McCollin had been in the classroom alone with the children for approximately thirty minutes and had been near N.G.'s sleep cot when K.S. returned to the classroom. *See id.*, 9/22/21, at 137-40. T.L., another teacher at Bright Horizons, testified that the children would refer to McCollin as "Mr. Andrew," and that N.H. disclosed to the entire class, while T.L. was reading to the children, that Mr. Andrew touched his penis during naptime. *Id.* at 259-62. When N.H. was later interviewed by law enforcement, he identified McCollin in a picture. *Id.* at 188. That picture was presented during trial. McCollin himself admitted to touching N.G.'s penis under his clothes and identified C.C. as another child he inappropriately touched, before law enforcement was

aware of C.C. as another potential victim. *See id.*, 9/23/21, at 289-94. This admission was recorded by law enforcement and shown to the jury at trial. *Id.* at 293-96.

We conclude that, considering all the evidence admitted at trial and viewing that evidence in the light most favorable to the Commonwealth, the jury reasonably could have found that the Commonwealth established McCollin as the perpetrator beyond a reasonable doubt. *Randall*, *supra*. Thus, this claim has no merit.

Next, McCollin argues that even if he was the perpetrator, there is insufficient evidence to prove that he touched the minor victims intentionally or otherwise inappropriately. For the following reasons, this claim is waived.

First, McCollin failed to raise this claim in his Rule 1925(b) statement. It is well-settled that an appellant's failure to include an issue in his Rule 1925(b) statement waives that issue for purposes of appellate review. *T.M.W. v. N.J.W.*, 227 A.3d 940, 947 (Pa. Super. 2020). Moreover, McCollin does not specify which of his convictions require that the touching be inappropriate, intentional, indecent, corrupting, or welfare-endangering. *See* Appellant's Brief, at 43. McCollin's argument is also devoid of citations to relevant case law, specific argument, or the record. *See* Pa.R.A.P. 2111, 2119.

An appellant bears the burden of sufficiently developing his arguments for appellate review. *Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) ("Where an appellate brief fails to provide any discussion of a claim with

citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him."). Accordingly, this claim is waived.

McCollin's third claim is that his convictions are against the weight of the evidence due to the overwhelming lack of credibility of the adult witnesses and lack of reliability of the minor victim witnesses. [17]

McCollin highlights the fact that because the minor victims were so young at the time of the alleged assaults and they did not testify until two years after the incidents occurred, their memories may not have been accurate, they may have been so traumatized that they were misled, and the time between the assaults and the trial was enough for "false or distorted memories" to replace the actual circumstances. Appellant's Brief, at 46. In addition, McCollin claims that Children's parents' testimony was "unnaturally clean and seamless" with "airtight consistency" and they seemed to "parrot" each other. *Id.* at 47. McCollin also notes that Children's parents had a financial interest in the outcome of the trial because they had pending civil lawsuits against McCollin regarding the alleged assaults. *Id.* at 14, 17, 46. Finally, McCollin argues that his in-court statements should be given greater

_____

[17] McCollin raised the weight issue in his post-trial motions. Thus, he has preserved it for appellate review. *See* Pa.R.Crim.P. 607. We note that while a court sheet states there was a hearing on the motions on July 18, 2022, and that the matter was taken under advisement, no stenographer is listed on the court sheet, nor was a transcript available for our review.

weight than his "flustered misrepresentations during his interview" with law enforcement. ***Id.*** at 47.

When a defendant challenges the weight of the evidence, relief in the form of a new trial may be granted only where the verdict shocks one's sense of justice. ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact." ***Id***. Moreover, in evaluating such a claim, this Court reviews the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence. ***Id***.

A review of the evidence admitted at trial reveals that N.G. disclosed the assault to his parents spontaneously, that McCollin, himself, pointed law enforcement in the direction of C.C., prompting his disclosure, and that N.H. also disclosed the details of McCollin's actions without any leading questions from his parents. N.H. also identified McCollin in a photo array during his forensic interview, well before trial. ***See*** N.T. Jury Trial, 9/22/21, at 188.

Instantly, the testimony by the minor victims at trial was consistent with their initial disclosures to parents and law enforcement. Additionally, the jury was able to view the recorded interviews of Children and weigh them against their trial testimony. McCollin was able to cross-examine the witnesses and highlight any inconsistencies between the initial disclosures and the testimony

- 18 -

at trial. Furthermore, McCollin cross-examined Children's parents about the pending civil case and any ulterior motives the parents may have had to testify against him. Finally, it is not the duty of either the trial court or this Court to determine how much weight the jury gave to McCollin's recorded out-of-court statement to law enforcement versus his in-court statements. The jury was free to believe all, part, or none of the evidence presented against McCollin. That the trial court determined the jury properly convicted McCollin is not so contrary to the evidence as to shock one's sense of justice. Thus, the trial court did not abuse its discretion in refusing to grant McCollin a new trial and this claim fails. *See Champney*, *supra*.

McCollin's final claim is a challenge to the discretionary aspects of his sentence. Such a claim is not appealable as of right; rather, a defendant's appeal is considered a petition for permission to appeal. *Commonwealth v. Williams*, 562 A.2d 1385, 1386-87 (Pa. Super. 1989) (en banc). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015). *See also* Pa.R.A.P. 902, 903; Pa.R.Crim.P. 720. The existence

of a substantial question must be determined on a case-by-case basis. *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa. Super. 1995).

In this case, McCollin filed a post-sentence motion for reconsideration of sentence, and a timely notice of appeal. McCollin has also included in his brief a statement of reasons relied on for allowance of appeal from discretionary aspects of sentence, pursuant to Rule 2119(f). *See* Appellant's Brief, at 22-23. Therefore, we now determine whether McCollin has raised a substantial question for review.

McCollin asserts that the trial court's sentence was contrary to fundamental norms, that the trial court failed to consider mitigating circumstances, that the trial court disregarded McCollin's possible rehabilitation and the nature and circumstances of the offenses, and that the trial court failed discuss its rationale for McCollin's sentence. *See* Appellant's Brief, at 22-23, 48-49. McCollin also argues that the court imposed "very nearly[,] in practical effect[,] a life sentence." *Id.* at 48.

To demonstrate that a substantial sentencing question exists, a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider the general guidelines provided by the legislature. *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000). More specifically, we have stated that "where a defendant merely asserts that his sentence is inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing scheme without explaining how or why, we cannot determine whether he has raised a

substantial question." **Id**. However, we have also held that if a trial court fails to state its reasons for sentencing and that sentence deviates from the guidelines, a substantial question exists. **See Commonwealth v. Garcia-Rivera**, 983 A.2d 777, 780 (Pa. Super. 2009). As McCollin was sentenced outside of the sentencing guidelines and he argues that the trial court failed explain its rationale for his sentence, we will consider the merits of McCollin's claim.

Our standard of review of the discretionary aspects of a sentence is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Pursuant to the Pennsylvania Sentencing Code, an appellate court must vacate a sentence if the trial court erroneously applied the Sentencing Guidelines, if the circumstances of the case cause the application of the guidelines to be clearly unreasonable, or if the court sentenced outside the guidelines in an unreasonable manner. **See** 42 Pa.C.S.A. § 9781(c). In reviewing the record on appeal from a discretionary aspect of sentence claim, we consider:

- 21 -

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

*Id.* at § 9781(d).

The sentencing court is permitted to deviate from the sentencing guidelines; however, the court must place on the record its reasons for the deviation. In sentencing outside of the guidelines, the court must demonstrate that it understands the sentencing guidelines ranges. Where the trial judge deviates from the sentencing guidelines . . . he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range.

*Garcia-Rivera*, 983 A.2d at 780 (internal citations omitted). *See also* 42 Pa.C.S.A. § 9721(b).

At sentencing, the court stated that it considered "all of the information that was provided at [the] hearings." N.T. Sentencing Hearing, 3/29/22, at 51. In addition, the court noted that sexual offenses against young children, as in this case, "are particularly abhorrent." *Id*. Although the court did not specifically note each item it considered in fashioning McCollin's sentence, we take the term "all" to mean that the court considered the factors as required. In its opinion, the trial court clarified that "all" encompassed "the facts of the case, the sentencing guideline ranges, the arguments of counsel, the victim impact testimony, and the allocution of [McCollin]." Trial Court Opinion, 12/16/22, at 16. The court pointed to the fact that Children were in McCollin's

care at the time of the abuse, that Children were of a vulnerable age, and that McCollin did not accept responsibility for his actions. ***See id.*** at 15.

Further, in his brief, McCollin fails to provide any argument or analysis as to how the sentence imposed is a *de facto* life sentence, whether each sentence is excessive or if it is the consecutive imposition that renders the sentence altogether excessive.[18]

McCollin was sentenced to an aggregate term of 34 to 68 years' imprisonment followed by 40 years' probation. ***See*** N.T. Sentencing Hearing, 3/29/22, at 51-55. McCollin had a prior record score of zero. For his convictions of aggravated indecent assault of a child,[19] EWOC,[20] indecent assault of a minor under the age of thirteen,[21] and institutional sexual assault

---

[18] We note that had McCollin provided argument, this claim, too, would fail. This Court has not recognized a definitive length of imprisonment as a *de facto* life sentence; however, we have rejected claims of *de facto* life sentences for aggregate sentences of 35 to 70 years' incarceration, similar to the instant case. ***See Commonwealth v. Anderson***, 224 A.3d 40, 46 (Pa. Super. 2019); ***see generally Commonwealth v. Austin***, 66 A.3d 798 (Pa. Super. 2013).

[19] On Count 1 of No. 4595-2019, McCollin was sentenced to 120 to 240 months' incarceration.

[20] On Count 3 of No. 4595-2019, Count 1 of No. 4596-2019, and Count 1 of No. 2971-2020, McCollin was sentenced to 60 to 120 months' incarceration for two counts and 42 to 84 months' incarceration for one count.

[21] On Count 5 of No. 4595-2019, Count 2 of No. 4596-2019, and Count 2 of No. 2971-2020, McCollin was sentenced to 84 months' probation for one count and 42 to 84 months' incarceration for two counts.

by a child care employee,[22] McCollin's sentence of incarceration fell above the aggravated range, but within the statutory maximum. McCollin's sentence of probation for his convictions of corruption of minors[23] goes above the Sentencing Guidelines but, with no incarceration period, does not exceed the statutory maximum.

While McCollin's sentence for each of his convictions, as stated above, is outside the Sentencing Guidelines, each is within the statutory maximum and less than the Commonwealth's requested aggregate sentence of 54 to 108 years' imprisonment. *See* Trial Court Opinion, 12/16/22, at 15. In addition, the discretion to impose a sentence, concurrent or consecutive to other sentences being imposed at the same time, lies within the sentencing court. *See Commonwealth v. Brown*, 249 A.3d 1206, 1212 (Pa. Super. 2021). Moreover, "[w]e will not disturb consecutive sentences unless the aggregate sentence is grossly disparate to the defendant's conduct, or viscerally appear[s] as patently unreasonable." *Id.* (internal quotations omitted).

Our review of the sentencing transcript reveals the court did not simply adopt the Commonwealth's representations nor did it abuse its discretion in

---

[22] On Count 4 of No 4595-2019, Count 4 of No. 4596-2019, and Count 3 of No. 2971-2020, McCollin was sentenced to 42 to 84 month's incarceration for two counts and 84 months' probation for one count.

[23] On Count 6 of No. 4595-2019, Count 3 of No. 4596-2019, and Count 4 of No. 2971-2020, McCollin was sentenced to 84 months' probation for two counts and 60 months' probation for one count.

sentencing McCollin. Rather, after the parties presented evidence and argument, the trial court imposed a sentence individualized to McCollin, taking into account the specifics of his crimes and all of the information provided to the court.[24] Accordingly, we can discern no abuse of discretion in the court's imposition of sentence.

Judgments of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/7/2023

---

[24] We look with distaste upon a court's cursory acknowledgement of "all of the information" used to guide the imposition of a sentence. In particular, sentencing outside the Sentencing Guidelines merits a full discussion of the factors and reasons for the sentence imposed. **See** 42 Pa.C.S.A. § 9721. Nevertheless, because the trial court stated that it considered all the information, we do not find the court's sentence unreasonable or a manifest abuse of discretion so as to merit vacatur of the sentence imposed. **See Shugars**, **supra**.